IN THE CASE OF


UNITED STATES, Appellee

v.

Patrick A. MIZGALA, Airman First Class
U.S. Air Force, Appellant

No. 04-0382

Crim. App. No. 34822

United States Court of Appeals for the Armed Forces

Argued October 13, 2004

Decided May 25, 2005

ERDMANN, J., delivered the opinion of the court, in which
GIERKE, C.J., and EFFRON and BAKER, JJ., joined.  CRAWFORD, J.,
filed a separate opinion concurring in the result and dissenting
in part.

Counsel

For Appellant:  Major James M. Winner (argued); Colonel Beverly
B. Knott, Lieutenant Colonel Carlos L. McDade, Major Terry L.
McElyea, and Major Andrew S. Williams (on brief).

For Appellee:  Major John C. Johnson (argued); Colonel LeEllen
Coacher and Lieutenant Colonel Robert V. Combs (on brief);
Lieutenant Colonel Gary F. Spencer.

Military Judge:  Gregory E. Pavlik


  **This opinion is subject to revision before final publication.**

United States v. Mizgala, No. 04-0382/AF

Judge ERDMANN delivered the opinion of the court.

Airman First Class Patrick A. Mizgala entered guilty pleas to numerous offenses[1] and was sentenced to a bad-conduct discharge, confinement for nine months, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority reduced the amount of forfeitures but approved the balance of the sentence. The United States Air Force Court of Criminal Appeals affirmed the findings and sentence. United States v. Mizgala, ACM 34822 (A.F. Ct. Crim. App. Jan. 23, 2004).

Article 10, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 810 (2000), assures the right of a speedy trial to military members by providing that "[w]hen any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him."

Mizgala was initially held in pretrial confinement for 117 days. His timely motion to dismiss for lack of a speedy trial

---

[1] Mizgala entered guilty pleas to attempted larceny, unauthorized absence, unauthorized absence terminated by apprehension, two specifications of wrongfully using cocaine, wrongfully using marijuana, larceny of a motor vehicle, and larceny of personal property in violation of Articles 80, 86, 112a, and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 886, 912a, 921 (2000), respectively.

United States v. Mizgala, No. 04-0382/AF

under Article 10 was denied by the military judge and Mizgala entered unconditional guilty pleas to all of the charges. We granted review to determine whether Mizgala's unconditional guilty pleas waived appellate review of the speedy trial motion and, if not, whether Mizgala was denied his Article 10 right to a speedy trial.[2] We find that Mizgala's unconditional guilty plea did not waive his right to appellate review of his litigated speedy trial motion, but find that his Article 10 right to speedy trial was not violated.

WAIVER

The Air Force Court of Criminal Appeals found that Mizgala waived consideration of his Article 10 claim by his unconditional guilty plea. In addition, that court held that even if the speedy trial issue had not been waived, there was no violation of Mizgala's Article 10 rights. After noting that the

_____

[2] We granted review of the following issues:

I.

WHETHER APPELLANT'S ARTICLE 10, UCMJ, RIGHT TO A SPEEDY TRIAL WAS WAIVED BY AN UNCONDITIONAL GUILTY PLEA IF THE GOVERNMENT DID NOT BRING APPELLANT TO TRIAL WITH REASONABLE DILIGENCE, TRIAL DEFENSE COUNSEL LITIGATED THE MATTER AT TRIAL, AND APPELLANT DID NOT AFFIRMATIVELY WAIVE HIS RIGHT TO A SPEEDY TRIAL.

II.

WHETHER APPELLANT'S ARTICLE 10, UCMJ, RIGHT TO A SPEEDY TRIAL WAS VIOLATED IF THE GOVERNMENT DID NOT BRING APPELLANT TO TRIAL WITH REASONABLE DILIGENCE.

3

United States v. Mizgala, No. 04-0382/AF

military judge incorrectly used a "gross negligence" standard, the court concluded that the military judge's error was not prejudicial, citing Barker v. Wingo, 407 U.S. 514 (1972).

Speedy Trial under the UCMJ

Congress enacted various speedy trial provisions in the UCMJ to address concerns about "the length of time that a man will be placed in confinement and held there pending his trial"; to prevent an accused from "languish[ing] in a jail somewhere for a considerable length of time" awaiting trial or disposition of charges; to protect the accused's rights to a speedy trial without sacrificing the ability to defend himself; to provide responsibility in the event that someone unnecessarily delays a trial; and to establish speedy trial protections under the UCMJ "consistent with good procedure and justice." Uniform Code of Military Justice: Hearings on H.R. 2498 Before a Subcomm. of the House Comm. on Armed Services, 81st Cong. 905-12, 980-983, 1005 (1949). See United States v. Tibbs, 15 C.M.A. 350, 359, 35 C.M.R. 322, 331 (1965)(Ferguson, J., dissenting); United States v. Hounshell, 7 C.M.A. 3, 7-8, 21 C.M.R. 129, 133-34 (1956).

Where an accused is incarcerated pending disposition of charges under the UCMJ, Congress has placed the onus on the Government to take "immediate steps" to move that case to trial. Article 10, UCMJ. "Particularly, [Congress] indicated that

4

United States v. Mizgala, No. 04-0382/AF

delay cannot be condoned if the accused is in arrest or confinement." United States v. Wilson, 10 C.M.A. 337, 340, 27 C.M.R. 411, 414 (1959).

While our cases have sometimes adopted different approaches to Article 10 speedy trial issues, they have consistently stressed the significant role Article 10 plays when servicemembers are confined prior to trial. We have referred to the right to a speedy trial as a "fundamental right" of the accused, United States v. Parish, 17 C.M.A. 411, 416, 38 C.M.R. 209, 214 (1968), and as "[u]nquestionably . . . a substantial right," Hounshell, 7 C.M.A. at 6, 21 C.M.R. at 132. A number of our earlier cases included speedy disposition of charges under the concept of "military due process." United States v. Prater, 20 C.M.A. 339, 342, 43 C.M.R. 179, 182 (1971) (citing United States v. Schlack, 14 C.M.A. 371, 34 C.M.R. 151 (1964)). See also United States v. Williams, 16 C.M.A. 589, 593, 37 C.M.R. 209 (1967).

The Government urges us to find that an unconditional guilty plea effectively waives a servicemember's Article 10 speedy trial rights in all instances. In support of their argument the Government directs our attention to Sixth Amendment jurisprudence, Rule for Courts-Martial (R.C.M.) 707(e), and the Speedy Trial Act of 1974, Pub. L. No. 93-619, 88 Stat. 2070, and points out that the speedy trial protection under each of those

5

United States v. Mizgala, No. 04-0382/AF

provisions is waived by an unconditional guilty plea.  We will examine each of these areas in turn.

Sixth Amendment

The Sixth Amendment to the United States Constitution contains the constitutional guarantee to a speedy trial.[3] Although the text of the amendment does not address waiver, courts have held that the Sixth Amendment right is waived by a voluntary guilty plea.  See Cox v. Lockhart, 970 F.2d 448, 453 (8th Cir. 1992)("A voluntary plea of guilty constitutes a waiver of all non-jurisdictional defects[,] . . . [and] the right to a speedy trial is non-jurisdictional in nature.") (citation omitted); Tiemans v. United States, 724 F.2d 928, 929 (11th Cir. 1984) ("[A] guilty plea waives all non-jurisdictional defects occurring prior to the time of the plea, including violations of the defendant's rights to a speedy trial and due process.").

We have consistently noted that Article 10 creates a more exacting speedy trial demand than does the Sixth Amendment. United States v. Cooper, 58 M.J. 54, 60 (C.A.A.F. 2003); United States v. King, 30 M.J. 59, 62 (C.M.A. 1990) (citing United States v. Powell, 2 M.J. 6 (C.M.A. 1976); United States v. Marshall, 22 C.M.A. 431, 47 C.M.R. 409 (1973)).  Not only is the

_____

[3] The Sixth Amendment provides, in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."

6

United States v. Mizgala, No. 04-0382/AF

demand for a speedy trial under the UCMJ more exacting, by virtue of Article 98, UCMJ, 10 U.S.C. § 898 (2000), unreasonable delay in disposing of criminal charges in the military is unlawful.[4]  See Powell, 2 M.J. at 8; United States v. Mason, 21 C.M.A. 389, 393, 45 C.M.R. 163, 167 (1972).  While the full scope of this "more exacting" Article 10 right has not been precisely defined by this court, it cannot be "more exacting" and at the same time be "consistent" with Sixth Amendment protections.

Rule for Courts-Martial 707

Rule for Courts-Martial 707 contains the speedy trial provision in the Rules for Courts-Martial.  Rule for Courts-Martial 707(e) provides that "a plea of guilty which results in a finding of guilty waives any speedy trial issue as to that offense."  We have found, however, that the language of Article 10 is "clearly different" from R.C.M. 707 and have held that Article 10 is not restricted by R.C.M. 707.  Cooper, 58 M.J. at 58-60 (holding that the protections of Article 10 extend beyond arraignment); Kossman, 38 M.J. at 261 ("[I]n the area of

---

[4] Article 98, UCMJ, 10 U.S.C. § 898 (2000), provides:
> Any person subject to this chapter, who (1) is responsible for unnecessary delay in the disposition of any case of a person accused of an offense under this chapter; or (2) knowingly and intentionally fails to enforce or comply with any provision of this chapter regulating the proceedings before, during, or after trial of an accused; shall be punished as a court-martial may direct.

7

United States v. Mizgala, No. 04-0382/AF

subconstitutional speedy trial, Article 10 reigns preeminent

over anything propounded by the President.").

The protections afforded confined or arrested

servicemembers under Article 10 are distinct and greater given

the nature of other speedy trial protections.  See United States

v. Reed, 41 M.J. 449, 451 (C.A.A.F. 1995) (listing sources for

the right to a speedy trial in the military); United States v.

Vogan, 35 M.J. 32, 33 (C.M.A. 1992) (also listing military

speedy trial right sources).  Rule for Courts-Martial 707(e)

therefore does not act as a limitation on the rights afforded

under Article 10.

Speedy Trial Act

Courts have uniformly held that a guilty plea "constitutes

a waiver of [an accused's] rights under the [Speedy Trial] Act."

United States v. Morgan, 384 F.3d 439, 442 (7th Cir. 2004).

While the Speedy Trial Act does not apply to offenses under the

UCMJ,[5] there is a further distinction in the allocation of

burdens under the two statutes.  The Speedy Trial Act imposes

the burden of proof upon an accused to support a motion to

dismiss.  18 U.S.C. § 3162(a)(2)(2000).  Under Article 10, the

_____

[5] 18 U.S.C. § 3172 (2)(2000) (stating that "offense" as used in
the Speedy Trial Act specifically excludes "an offense triable
by court-martial").

8

United States v. Mizgala, No. 04-0382/AF

Government has the burden to show that the prosecution moved forward with reasonable diligence in response to a motion to dismiss. United States v. Brown, 10 C.M.A. 498, 503, 28 C.M.R. 64, 69 (1959). This distinction is additional proof of the importance of Article 10 to the incarcerated servicemember.

We therefore find nothing in the comparisons to the Sixth Amendment, R.C.M. 707 or the Speedy Trial Act that would compel our application of their speedy trial waiver rules to Article 10. It falls to this court then to determine whether an unconditional guilty plea waives a litigated Article 10 speedy trial motion.

Article 10 Waiver Precedent

Over the years our cases have taken different views as to how or whether the right to a speedy trial under Article 10 could be waived. These divergent views have manifested themselves in cases involving forfeiture for failure to raise the issue at trial and as well as in cases considering waiver of the right due to an unconditional guilty plea. In an early case that considered Article 10 speedy trial rights, the court adopted the view that the right to a speedy trial could be forfeited for failing to raise the issue at trial:

> The right to a speedy trial is a personal right which can be waived. If the accused does not demand a trial or does not object to the continuance of a case at the prosecution's request or if he goes to trial

9

United States v. Mizgala, No. 04-0382/AF

> without making any objection to the lapse of
> time between the initiation of the charges
> and the trial, he cannot complain of the
> delay after he has been convicted.

Hounshell, 7 C.M.A. at 6, 21 C.M.R. at 133 (citation omitted).

A short time later, however, Judge Quinn, the author judge in

Hounshell, wrote with regard to speedy trial in another

contested case that "[i]n the military, application of the rule

of waiver, where the accused is confined, has little to

recommend it." Wilson, 10 C.M.A. at 341, 27 C.M.R. at 415.

Similarly, our cases involving waiver and unconditional

guilty pleas have vacillated. In United States v. Rehorn, 9

C.M.A. 487, 488-89, 26 C.M.R. 267, 268-69 (1958), the court

stated, "It is a fundamental principle of Federal criminal law

that a plea of guilty waives all defects which are neither

jurisdictional nor a deprivation of due process of law."

Subsequently in United States v. Schalck the court held "that

delay in preferring charges against the accused was not waived

by his failure to raise the issue at trial and by his plea of

guilty." 14 C.M.A. at 375, 34 C.M.R. at 155. See also United

States v. Goode, 17 C.M.A. 584, 587, 38 C.M.R. 382, 385 (1968)

(finding that guilty plea does not deprive accused of protection

afforded by Article 10); United States v. Cummings, 17 C.M.A.

376, 381, 38 C.M.R. 174, 179 (1968)(finding that a waiver of the

right to a speedy trial as part of a pretrial agreement is

United States v. Mizgala, No. 04-0382/AF

contrary to public policy); Tibbs, 15 C.M.A. at 353, 35 C.M.R. at 325 (reiterating that accused who pleads guilty does not lose protection accorded by Article 10).

A short time later, the court again changed direction on waiver in another case involving a guilty plea: "We answer in the affirmative the certified question . . . which asks whether '. . . an accused who does not object at the time of trial to a delay in excess of three months in bringing him to trial will be precluded from raising the issue at the appellate level . . . .'" United States v. Sloan, 22 C.M.A. 587, 590, 48 C.M.R. 211, 214 (1974) (citation omitted). Recently, in United States v. Birge, this court acknowledged the rule of waiver from Sloan but declined to address whether an Article 10 speedy trial claim was waived by a guilty plea under R.C.M. 707(e). 52 M.J. 209, 211-12 (C.A.A.F. 1999).

We take this opportunity to revisit our examination of whether an Article 10 claim is waived by an unconditional guilty plea or whether it may be reviewed by an appellate court in cases where the accused unsuccessfully raises an Article 10 issue at trial and then enters an unconditional guilty plea.[6] In

---

[6] The pivotal issue in this case involves the scope of the speedy trial right set forth in Article 10, UCMJ, and is an issue of statutory interpretation. Therefore, the discussion in the dissent regarding the application of the Bill of Rights to servicemembers is not pertinent to the present case.

11

United States v. Mizgala, No. 04-0382/AF

view of the legislative importance given to a speedy trial under the UCMJ and the unique nature of the protections of Article 10 discussed above, we believe that where an accused unsuccessfully raises an Article 10 issue and thereafter pleads guilty, waiver does not apply.  Such a rule for Article 10 rights properly reflects the importance of a servicemember's right to a speedy trial under Article 10.  Preservation of the right to appeal adverse Article 10 rulings is not only supported by the congressional intent behind Article 10, it also maintains the high standards of speedy disposition of charges against members of the armed forces and recognizes "military procedure as the exemplar of prompt action in bringing to trial those members of the armed forces charged with offenses."  United States v. Pierce, 19 C.M.A. 225, 227, 41 C.M.R. 225, 227 (1970).  See also United States v. Hatfield, 44 M.J. 22, 24 (C.A.A.F. 1996) ("[T]he mandate that the Government take immediate steps to try arrested or confined accused must ever be borne in mind.").  A fundamental, substantial, personal right -- a right that dates from our earlier cases[7] -- should not be diminished by applying ordinary rules of waiver and forfeiture associated with guilty pleas.

_____

[7]United States v. Prater, 20 C.M.A. 339, 342, 43 C.M.R. 179, 182 (1971); United States v. Clay, 1 C.M.A. 74, 77, 1 C.M.R. 74 (1951).

12

We therefore hold that a litigated speedy trial motion under Article 10 is not waived by a subsequent unconditional guilty plea. Thus, Mizgala's unconditional guilty plea did not waive his right to contest the military judge's denial of his Article 10 motion on appeal.[8]

Having concluded that Mizgala did not waive review of his Article 10 claim by entering an unconditional guilty plea, we proceed to the merits of that claim.

ARTICLE 10 SPEEDY TRIAL

The standard of diligence under which we review claims of a denial of speedy trial under Article 10 "is not constant motion, but reasonable diligence in bringing the charges to trial." Tibbs, 15 C.M.A. at 353, 35 C.M.R. at 325. See also Kossman, 38 M.J. at 262; United States v. Johnson, 1 M.J. 101 (C.M.A. 1975). Short periods of inactivity are not fatal to an otherwise active prosecution. Tibbs, 15 C.M.A. at 353, 35 C.M.R. at 325 (citing United States v. Williams, 12 C.M.A. 81, 83, 30 C.M.R. 81, 83 (1961)). Further, although Sixth Amendment speedy trial standards cannot dictate whether there has been an Article 10 violation, the factors from Barker v. Wingo are an apt

---

[8] By virtue of our decision that Mizgala did not waive the Article 10 issue, it is not necessary to address his alternative claim of ineffective assistance of counsel.

13

United States v. Mizgala, No. 04-0382/AF

structure for examining the facts and circumstances surrounding an alleged Article 10 violation.  Cooper, 58 M.J. at 61; Birge, 52 M.J. at 212.

We review the decision of whether an accused has received a speedy trial de novo as a legal question, giving substantial deference to a military judge's findings of fact that will be reversed only if they are clearly erroneous.  Cooper, 58 M.J. at 57-59; United States v. Doty, 51 M.J. 464, 465 (C.A.A.F. 1999).

Facts Relevant to the Speedy Trial Determination

The parties stipulated at trial to a chronology of events relating to the pretrial processing of this case.  Additional information was provided by testimony from the deputy staff judge advocate and the former chief of military justice at Sheppard Air Force Base (AFB).  Ultimately, the military judge made findings of fact in support of his ruling on the speedy trial motion.

Mizgala was absent without leave (AWOL) on January 18 and 19, 2001.  Upon his return to military control, he confessed to using cocaine while absent.  He went AWOL again on February 5, and remained absent until February 28.  This second absence ended because Mizgala became involved in an off-base incident concerning an attempt to steal beer.  Upon his return, he confessed that he used both cocaine and marijuana during this absence.

United States v. Mizgala, No. 04-0382/AF

Mizgala was placed in pretrial confinement on February 28 and a pretrial confinement hearing was conducted three days later on March 3. The hearing officer determined that continued pretrial confinement was warranted because Mizgala was a flight risk and likely to engage in additional misconduct.

On March 12, 2001, the Government received the results of a urinalysis on a sample given when Mizgala entered pretrial confinement. Those results indicated the presence of both cocaine and marijuana in Mizgala's urine sample. At the end of March or early in April, the trial counsel prepared draft charges and forwarded them to the staff judge advocate. The draft charge sheet was returned to add a charge for the attempt to steal beer in the civilian community. Trial counsel then requested Security Forces to obtain the Wichita Falls Police Department report pertaining to this incident.

Of importance in this case is that during the time that this case was processed, the legal office at Sheppard AFB was operating out of a temporary facility because a fire had destroyed their facility. On April 13, 2001, the office moved to a semipermanent facility. On April 16, 2001, Mizgala made a request for a speedy trial. The deputy staff judge advocate testified that because Mizgala was in pretrial confinement when he made his demand for speedy trial, his case was already in a priority status.

15

The trial counsel requested the litigation packet pertaining to the pretrial confinement urinalysis from the laboratory at Brooks AFB, Texas, on April 23.  On May 10, a police report pertaining to the attempted larceny of beer was received from the Wichita Falls Police Department.  On May 14, seventy-five days after the initiation of pretrial confinement, charges were preferred against Mizgala.

An investigating officer was appointed under Article 32, UCMJ, 10 U.S.C. § 832 (2000), on May 22.  He conducted the investigation on May 24 and completed the report of investigation the following day.  The completed Article 32 investigation was forwarded to the defense on May 29.  The record contains no indication that the defense made any objections or filed any comments on the report of investigation.  In the interim, a memorandum indicating that Wichita Falls would not prosecute the attempted larceny of beer was received by the legal office.

On June 5, the referral package and a related request for immunity were forwarded by the Sheppard AFB legal office to the staff judge advocate for the convening authority.  The R.C.M.

406 pretrial advice[9] was completed on June 20, and the case was referred to trial the following day. However, Mizgala was rapidly approaching the 120-day limit contained in R.C.M. 707 and because the Government did not believe that he could be tried before then, they released him from pretrial confinement on June 21, 2001. The following day, Mizgala once again went AWOL.[10]

After considering the stipulated chronology of events, two witnesses, and arguments, the military judge denied the motion to dismiss for violation of Article 10. Although the military judge found "inefficiencies throughout this process," he ultimately held:

> As such, at least as it applies to this case, I find that the government has exercised reasonable diligence insofar as it has complied with R.C.M. 707 and as that

---

[9] Prior to referral of charges to a general court-martial, the staff judge advocate shall consider the charges and provide a written and signed advice to the convening authority. R.C.M. 406(a), (b). That advice shall include the staff judge advocate's:
  (1) Conclusion with respect to whether each specification alleges an offense under the code;
  (2) Conclusion with respect to whether the allegation of each specification is warranted by the evidence indicated in the report of investigation (is there is such a report);
  (3) Conclusion with respect to whether a court-martial would have jurisdiction over the accused and the offense; and
  (4) Recommendation of the action to be taken by the convening authority.
R.C.M. 406(b).
[10] The period of delay from June 22 to the date of trial is not at issue in this appeal.

17

> equates to Article 10 in this particular
> circumstance.  I do not believe that the
> inefficiencies mentioned equate to
> negligence that's outlined in Kossman, and I
> believe that is a standard that effectively
> would have to amount to gross negligence.
> And I find that by a preponderance of the
> evidence.

When he later announced additional findings, the military judge adhered to his speedy trial ruling and reiterated that "I must essentially equate the R.C.M. standard with an Article 10 violation."  He further stated that gross negligence was required to support an Article 10 violation.  Also, while the military judge's ruling did reflect some consideration of the Barker factors, it did so in a manner that indicated that the military judge limited his consideration to a Sixth Amendment speedy trial analysis.

## DISCUSSION

We agree with the Court of Criminal Appeals that the military judge plainly erred in the manner in which he reviewed Mizgala's Article 10 motion.  His ruling was erroneous as a matter of law in three regards.  First, Article 10 and R.C.M. 707 are distinct, each providing its own speedy trial protection.  The fact that a prosecution meets the 120-day rule of R.C.M. 707 does not directly "or indirectly" demonstrate that the Government moved to trial with reasonable diligence as

18

United States v. Mizgala, No. 04-0382/AF

required by Article 10.  See United States v. Edmond, 41 M.J. 419, 421 (C.A.A.F. 1995); Kossman, 38 M.J. at 260-61.

Second, the military judge erred in determining that he was required to find gross negligence to support an Article 10 violation in the absence of Government spite or bad faith.  An Article 10 violation rests in the failure of the Government to proceed with reasonable diligence.  A conclusion of unreasonable diligence may arise from a number of different causes and need not rise to the level of gross neglect to support a violation. Kossman, 38 M.J. at 261.  Finally, the military judge erred by limiting his consideration of the Barker v. Wingo factors to a Sixth Amendment speedy trial analysis.  We have held that "it is 'appropriate' to consider those factors 'in determining whether a particular set of circumstances violates a servicemember's speedy trial rights under Article 10.'"  Cooper, 58 M.J. at 61 (quoting Birge, 52 M.J. at 212).

Turning to the substance of Mizgala's claim, our framework to determine whether the Government proceeded with reasonable diligence includes balancing the following four factors:  (1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant.  See Barker, 407 U.S. at 530.  See also Birge, 52 M.J. at 212.  Applying those factors to Mizgala's case, we remain mindful that we are looking at the proceeding as

19

United States v. Mizgala, No. 04-0382/AF

a whole and not mere speed:  "[T]he essential ingredient is orderly expedition and not mere speed."  United States v. Mason, 21 C.M.A. 389, 393, 45 C.M.R. 163, 167 (C.M.A. 1972) (quoting Smith v. United States, 369 U.S. 1, 10 (1959)).

The processing of this case is not stellar.  We share the military judge's concern with several periods during which the Government seems to have been in a waiting posture:  waiting for formal evidence prior to preferring charges and waiting for a release of jurisdiction for an offense that occurred in the civilian community.  There are periods evidencing delay in seeking evidence of the off-post offense and seeking litigation packages to support prosecution of the drug offenses.  Nevertheless, constant motion is not the standard so long as the processing reflects reasonable diligence under all the circumstances.  Our evaluation must balance the delay against the reasons for these periods of delay (such as the need to investigate offenses and obtain evidence), with the need to coordinate investigation and jurisdiction with civilian authorities.  Once these necessary steps were completed, the Government moved expeditiously to refer the charges.

As to the consideration of possible prejudice, we find no material prejudice to Mizgala's substantial rights.  In this regard, we note the test for prejudice set forth by the Supreme Court:

20

United States v. Mizgala, No. 04-0382/AF

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

Barker, 407 U.S. at 532 (footnote omitted). Mizgala experienced 117 days of pretrial confinement, which necessarily involves some anxiety and stress, but there is no evidence in the record that the conditions of that confinement were harsh or oppressive. Finally, there is no indication that his preparation for trial, defense evidence, trial strategy, or ability to present witnesses, on both the merits and sentencing, were compromised by the processing time in this case. Balancing those factors identified by the Supreme Court, we find that prejudice, if any, was minimal.

We hold that Mizgala was not denied his Article 10 right to a speedy trial and, after our de novo review of the speedy trial issue, we find there was no prejudice from the military judge's application of an erroneous standard of law.

## DECISION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

21

United States v. Mizgala, No. 04-0382/AF

CRAWFORD, Judge (dissenting in part and concurring in the result):

While the majority notes that Article 10, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 810 (2000), is a "more exacting" right, it overlooks the history behind the UCMJ provisions of the Manual for Courts-Martial, United States (2002 ed.)(MCM), and mainstream jurisprudence in this area. Thus, I respectfully dissent from the majority opinion that an unconditional plea of guilty does not waive Appellant's rights to a speedy trial whether asserted under the Sixth Amendment, the UCMJ, or the MCM. The congressional history underlying Article 10 has not altered what a majority of the courts have held concerning unconditional guilty pleas.

History Behind the UCMJ. When Congress passed the UCMJ in 1950, there was some question as to the applicability of the Bill of Rights to members of the Armed Forces. Fifty-five years later, the Supreme Court still has never expressly held that the Bill of Rights applies to servicemembers. In United States ex rel. Innes v. Crystal, 131 F.2d 576, 577 n.2 (2d Cir. 1943) (citing Ex parte Quirin, 317 U.S. 1 (1942)), the court stated, "The Fifth and Sixth Amendments are, of course, inapplicable to courts-martial." This question about the application of the

Bill of Rights to the military resulted in Congress passing Articles 10, 27,[1] 31,[2] 44,[3] 46,[4] and 63,[5] UCMJ.

Early in the Court's history, when examining the question of speedy trial, it "bottom[ed] those [constitutional] rights and privileges" on the Due Process Clause of the Fourteenth Amendment rather than on the specific provisions in the Bill of Rights. United States v. Clay, 1 C.M.A. 74, 77, 1 C.M.R. 74, 77 (1951). In one of our earlier cases, United States v. Hounshell, this Court stated, "[t]he United States Constitution guarantees to a person protected under federal law 'the right to speedy and public trial.' Article 10 of the Uniform Code . . . reiterates that guarantee . . . ." 7 C.M.A. 3, 6, 21 C.M.R. 129, 132 (1956)(quoting U.S. Const. amend. VI). Indeed, the legislative history behind Article 10 strongly suggests it was intended only to remedy delays concerning pretrial restraint. See Uniform Code of Military Justice: Hearings on H.R. 2498 Before a Subcomm. of the House Comm. on Armed Services, 81st Cong. 905-12 (1949)[hereinafter UCMJ Hearings]. That subcommittee viewed Article 10 solely as a tool to terminate lengthy pretrial confinement. Id.

---

[1] 10 U.S.C. § 827 (2000).
[2] 10 U.S.C. § 831 (2000).
[3] 10 U.S.C. § 844 (2000).
[4] 10 U.S.C. § 846 (2000).
[5] 10 U.S.C. § 863 (2000).

The right to counsel guaranteed under Article 27 was not applicable through the Bill of Rights to state proceedings until 1963.  It was not until that year, in Gideon v. Wainwright, 372 U.S. 335 (1963), that the Supreme Court extended the right to appointment of counsel in state cases to all indigent felony defendants.  Prior to that, Congress had ensured some right to counsel for military members by passing Article 27, but that right was limited to general courts-martial.  Congress extended this right to special courts-martial in 1968.  Of course, it is not enough to have counsel; counsel must zealously represent the accused, starting with a full investigation of the case.  See, e.g., House v. Balkcom, 725 F.2d 608 (11th Cir. 1984).  The right to counsel is one of the most valuable rights that a defendant possesses, but certain decisions are for the defendant to control while the remainder are left with counsel.  The Supreme Court has recognized that counsel has the authority to manage most aspects of the defense without obtaining the defendant's approval.  See, e.g., Nixon v. Florida, 125 S. Ct. 551 (2004).  In New York v. Hill, the Supreme Court stated: "[D]efense counsel's agreement to a trial date outside the time period required by [the Interstate Agreement on Detainers] bars the defendant from seeking dismissal because trial did not occur within that period."  528 U.S. 110, 111 (2000).  Moreover, the Hill Court said, "only counsel is in a position to assess the

3

benefit or detriment of the delay to the defendant's case," Id. at 115, and "only counsel is in a position to assess whether the defense would even be prepared to proceed any earlier." Id.

Feeling that the self-incrimination clause did not apply to military members, Congress enacted Article 31 to protect the right against self-incrimination in the military setting. Additionally, in enacting Article 31(b), Congress was concerned that the interrogation environment in the military and the interplay between military relationships and following orders deserved protection. See UCMJ Hearings at 984-85. As this Court stated, "[u]ndoubtedly it was the intent of Congress in this division of the Article to secure to persons subject to the Code the same rights secured to those of the civilian community under the Fifth Amendment to the Constitution of the United States -- no more and no less." United States v. Eggers, 3 C.M.A. 191, 195, 11 C.M.R. 191, 195 (1953). In his testimony on the UCMJ, Mr. Felix Larkin, Assistant General Counsel in the Office of the Secretary of Defense, expressed the desire to "retain the constitutional protections against self-incrimination." UCMJ Hearings at 988. The UCMJ was enacted to ensure those constitutional rights because of the deep division as to the applicability of those rights in different factual scenarios. The commentary to Article 31(a) also underscores the intent to "extend [the] privilege against self-incrimination to

4

all persons under all circumstances." H.R. Rep. 81-491 at 19 (1949).

Likewise, Congress enacted Article 44 because "the application of [the Fifth Amendment] is in doubt . . . . The matter could be clarified by extending the protection of the fifth amendment rather than granting protection by means of different or new statutory enactment." Uniform Code of Military Justice: Hearings on § 857 and H.R. 4080 Before a Subcomm. of the Senate Comm. on Armed Services, 81st Cong. 111 (1949) (statement of Sen. Pat McCarran, Chairman, Senate Judiciary Comm.). House commentary on the UCMJ observed: "The question is whether the constitutional provision of jeopardy follows a person who enters military service." H.R. Rep. 81-491 at 23.

As to the double jeopardy provision, this Court reiterated the theme that the Constitution did not apply, stating, "The constitutional privilege against former jeopardy, applicable to the civilian community, is granted to offenders against military law by Article 44 . . . ." United States v. Ivory, 9 C.M.A. 516, 519-20, 26 C.M.R. 296, 299-300 (1958).

In the past, this Court applied a due process examination before it had announced that the Bill of Rights applies "except those [rights] which are expressly or by necessary implication inapplicable." United States v. Jacoby, 11 C.M.A. 428, 430-31, 29 C.M.R. 244, 246-47 (1960). Because the Supreme Court has not

United States v. Mizgala, No. 04-0382/AF

held that the Bill of Rights applies to servicemembers, our Court, in its early years, did not rely upon speedy trial rights.

The question of the application of the Fourth Amendment as to the right to privacy,[6] the self-incrimination clause of the Fifth Amendment,[7] speedy trial,[8] or the right of confrontation cross-examination under the Sixth Amendment[9] is moot based on congressional and presidential actions.

MCM Provision. The majority also overlooks R.C.M. 707(e), which states that: "Except as provided in R.C.M. 910(a)(2) [conditional pleas], a plea of guilty which results in a finding of guilty waives any speedy trial issue as to that offense." (Emphasis added.) This provision by the President does not violate any constitutional provision -- there is certainly none prohibiting this waiver, and many federal courts provide for such a waiver.

Because the majority overlooks mainstream jurisprudence and the MCM provisions, I respectfully dissent.

---

[6] Military Rule of Evidence (M.R.E.) 311-317.
[7] Article 31, UCMJ; M.R.E. 301-306.
[8] Article 10, 33; R.C.M. 707.
[9] Article 46, UCMJ; R.C.M. 702, 703; M.R.E. 611.

6