ERDMANN, Judge
(dissenting):
Because the convening authority’s November 6, 2001, action did not dismiss the charges or stop the speedy trial clock, I respectfully dissent.
The Uniform Code of Military Justice and the Manual for Courts-Martial (MCM) establish a unique system of justice. As a result, actions taken in the military justice system often have unique meanings and effects. “Dismissal” and “withdrawal” are terms of art, with distinct meanings under the Rules for Courts-Martial (R.C.M.). A commander may “dismiss” charges and thereby extinguish them. R.C.M. 401(c)(1). “Withdrawal”, on the other hand, can occur *83 only after charges have been referred to a court-martial. R.C.M. 604(a). Withdrawal does not, however, extinguish the charges. The Government should be bound by the actual meaning of the terms it employs and I am not persuaded by subsequent arguments that we should construe those terms to mean something distinctly different and contrary to their ordinary meanings in the military justice system.
The staff judge advocate’s November 2, 2001, memorandum to the convening authority specifically recommended in three separate sentences that the charges be “withdrawn.” The convening authority specifically “concur[red]” with that recommendation. In addition, the initial charge sheet reflects that the charges were “withdrawn.” Because none of these charges had been referred for trial by courts-martial, withdrawal was not possible. The purported withdrawal was a legal and factual nullity.
There is no evidence or manifestation of the convening authority’s intent supporting any conclusion that these charges were dismissed. This court should not rewrite the procedural history of this case to come to that conclusion. The UCMJ and MCM establish rules and procedures as determined by the Congress and President, respectively. To the extent that those rules and our decisions demand procedural compliance from the defense, so too should we demand adherence to the rules by the Government. Withdrawal of these unreferred charges was a nullity that this court should not convert into a legal dismissal of the charges.
Turning to the speedy trial issue, I agree with the majority that Tippit’s unconditional guilty pleas waived the Sixth Amendment and R.C.M. 707 speedy trial issues. However, in the context of this case and as framed by the parties at trial, I conclude that the issue of Tippit’s right to a speedy trial under Article 10, UCMJ, 10 U.S.C. § 810 (2000), was preserved for appellate review. See United States v. Mizgala, 61 M.J. 122, 127 (C.A.A.F.2005). Although the defense’s written speedy trial motion did not specifically rely upon Article 10, UCMJ, the Government obviously recognized the applicability of this fundamental right and argued in its written response that Article 10, UCMJ, had not been violated. In turn, the military judge recognized that the issue had been placed before him. He considered and ruled upon Tippit’s right to a speedy trial under Article 10, UCMJ, and found that the Government had proceeded with reasonable diligence. Tippit subsequently appealed the Article 10, UCMJ, speedy trial issue to the Court of Criminal Appeals, which reviewed the Article 10, UCMJ, issue and affirmed the military judge’s determination. In my view this constitutes litigation of the Article 10, UCMJ, speedy trial issue at trial and preserves the matter for appellate review. Mizgala, 61 M.J. at 127. Just as the Court of Criminal Appeals did, I would proceed to review Tip-pit’s Article 10, UCMJ, claim.
Because the charges were never dismissed, the Government’s accountability for speedy trial commenced on September 10, 2001, and October 10, 2001, when the charges in this case were preferred. That accountability continued uninterrupted up to the time of Tippit’s trial — an excessive delay of over one year. “[The] framework to determine whether the Government proceeded with reasonable diligence includes balancing the following four factors: (1) the length of the delay; (2) the reasons for the delay; (8) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant.” Mizgala, 61 M.J. at 129 (citing Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); United States v. Birge, 52 M.J. 209, 212 (C.A.A.F.1999)).
Although there may have been some complexity involved in the forensic investigation of this case, I conclude that this delay was unjustified and well beyond that which can be considered reasonably necessary. Tippit demanded a speedy trial on August 20, 2001. During this period of delay, Tippit was restricted on June 15, 2001, released from active duty on November 6, 2001, recalled to active duty on June 5, 2002, and reported for duty two days later. Trial did not commence until November 21, 2002. This extended process strained Tippit’s family relationships, disrupted his civilian affairs, and placed add *84 ed burdens upon his wife. The fact that Tippit was misadvised that the charges were dismissed, the uncertainty he experienced in his civilian life, and the disruption in his personal life constitute unusual anxiety that I find prejudicial. See id. (citing Barker, 407 U.S. at 532, 92 S.Ct. 2182).
I would conclude that the Government failed to act with due diligence to bring Tip-pit to trial and that Tippit was prejudiced by the delay in violation of Article 10, UCMJ. Therefore, I would set aside the decision of the Court of Criminal Appeals, set aside the findings and sentence, and dismiss the charges with prejudice. United States v. Kossman, 38 M.J. 258, 262 (C.M.A.1993). Accordingly, I would not reach the ineffective assistance of counsel claim or the providence of Tippit’s guilty pleas.