ERDMANN, Judge,
with whom EFFRON, Chief Judge, joins (dissenting in part and concurring in the result):
This court reviews whether an accused received a speedy trial “de novo as a legal question, giving substantial deference to a military judge’s findings of fact that will be reversed only if they are clearly erroneous.” United States v. Mizgala, 61 M.J. 122, 127 (C.A.A.F.2005). This case presents two issues: whether Schuber’s base restriction constituted “arrest” for purposes of an Article 10, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 810 (2006), speedy trial motion; and whether the period of delay resulted in a violation of Article 10, UCMJ. While I would hold that Sehuber’s restriction to base constituted “arrest” as that term is defined in Article 9, UCMJ, 10 U.S.C. § 809 (2006), I do not believe that Schuber suffered prejudice based on the delay. In balancing the Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), factors, I would not find an Article 10, UCMJ, violation. Accordingly, while I respectfully dissent from the majority’s decision as to the meaning of “arrest” for purposes of Article 10, I concur in the result as to the Article 10 violation.
Whether Schuber’s Restriction Constituted “Arrest” As That Term is Defined in Article 9, UCMJ
In calculating the time period for speedy trial purposes, the military judge included both the period that Schuber was in pretrial confinement and the period he was subject to base restriction. In reviewing the military judge’s speedy trial determination, the United States Air Force Court of Criminal Appeals also included both time periods.[1] “A military judge is presumed to know and apply the law correctly.” United States v. Raya, 45 M.J. 251, 253 (C.A.A.F.1996).
Article 10 is implicated when a “person subject to this chapter is placed in arrest or confinement prior to trial.” There is no dispute that the seventy-one days Schuber spent in pretrial confinement is appropriate for consideration under Article 10. The issue in contention is whether the sixty-seven additional days that Schuber was restricted to base constitute “arrest” as that term is defined in the UCMJ. The only definition of “arrest” in the UCMJ is found in Article 9: “the restraint of a person by an order, not imposed as a punishment for an offense, directing him to remain within certain specified limits.” Article 9, UCMJ. This court uses well-established principles of statutory construction to construe provisions in the Manual for Courts-Martial. United States v. Lewis, 65 M.J. 85, 88 (C.A.A.F.2007). “The plain language will control, unless use of the plain language would lead to an absurd result.” Id.
The majority notes that while this court has found that some restrictions constitute arrest, others do not. United States v. Schuber, 70 M.J. 185-86 (C.A.A.F. 2011). The majority then examines the legislative history of Article 10 and Rule for Courts-Martial (R.C.M.) 304 and the “more nuanced treatment of the distinctions between restriction and arrest.” Id. at 185-86. What is not *190 examined is the clear language found in the definition of “arrest” in Article 9. Despite that definition, the majority concludes that:
[wjhether a particular restriction amounts to arrest for the purposes of Article 10, UCMJ, will depend on a contextual analysis akin to that applied to “close arrest,” including consideration of such factors as the geographic limits of constraint, the extent of sign-in requirements, whether restriction is performed with or without escort, and whether regular duties are performed.
Id. at 187.
As the language of Articles 9 and 10 are clear and unambiguous, I do not believe it necessary to delve into either a “close arrest” contextual analysis or the legislative history of the term “arrest.” Schuber was restricted to base and ordered to provide weekly urine samples. Clearly he was “[restrained] ... by an order, not imposed as punishment for an offense, directing him to remain within certain specified limits.”[2] Article 9, UCMJ. I would find that the military judge and the Court of Criminal Appeals properly included the time Schuber was restricted to base in calculating the time period for speedy trial purposes.

Article 10 Speedy Trial Violation

“The test for assessing an alleged violation of Article 10 is whether the Government has acted with ‘reasonable diligence’ in proceeding to trial.” United States v. Birge, 52 M.J. 209, 211 (C.A.A.F.1999). “Short periods of inactivity are not fatal to an otherwise active prosecution.” Mizgala, 61 M.J. at 127. The military judge issued detailed findings of fact and conclusions of law in finding an Article 10 speedy trial violation. In his conclusions of law, the military judge balanced the four factors laid out by the Supreme Court in Barker, 407 U.S. at 530, 92 S.Ct. 2182, to evaluate violations of a defendant’s speedy trial right. While he did not find a Sixth Amendment speedy trial violation, he did find an Article 10 violation.
We have consistently held that:
Article 10 creates a more exacting speedy trial demand than does the Sixth Amendment. ... While the full scope of this “more exacting” Article 10 right has not been precisely defined by this court, it cannot be “more exacting” and at the same time be “consistent” with Sixth Amendment protections.
Mizgala, 61 M.J. at 124-25 (citations omitted). We have noted that while “Sixth Amendment speedy trial standards cannot dictate whether there has been an Article 10 violation, the factors from Barker v. Wingo are an apt structure for examining the facts and circumstances surrounding an alleged Article 10 violation.” Id. at 127. As we discussed in Mizgala, the four Barker factors are: (1) the length of delay; (2) the reasons for the delay; (3) whether appellant made a demand for a speedy trial; and (4) prejudice to the appellant. Id. at 129.

Length of delay

The majority analyzes this factor utilizing the seventy-one-day period that Schuber was in pretrial confinement in finding that the delay was not unreasonable on its face and that the Barker test therefore was not triggered. Schuber, 70 M.J. at 188-89. Were we dealing only with a seventy-one-day delay, I might agree with the majority’s analysis. However, as I would include the entire 138-day time period, our prior cases make it clear that a delay of that duration is sufficient to trigger the full Barker analysis in an Article 10 context.[3] See United States v. *191 Kossman, 38 M.J. 258, 261 (C.M.A.1993) (holding that “nothing in Article 10 that suggests that speedy-trial motions could not succeed where a period under 90- or 120-days is involved.”); see also Mizgala, 61 M.J. at 128-29 (117-day delay triggered the full Barker analysis); United States v. Cossio, 64 M.J. 254, 257 (C.A.A.F.2007) (117 days); United States v. Thompson, 68 M.J. 308, 312 (C.A.A.F.2010) (145 days).

Reasons for the delay

At the trial level the Government argued that the initial seventy-five-day delay was due to the “adjudicative process” and the press of other business. As to the period of delay after referral, the Government argued that the delay was justified as they had to wait for a particular expert from the Air Force Drug Testing Laboratory. After taking testimony on the speedy trial motion, the military judge found that the Government had been unconcerned with the multiple speedy trial requests in this case. The military judge noted that of the ten eases that were completed while Schuber was in confinement, only one involved an individual in pretrial confinement who had made a speedy trial request. Noting that the Government had failed to notify the court of the pre-referral speedy trial requests, which reflected its lack of concern for processing the case in a timely manner, the military judge concluded that this was a commonplace urinalysis drug case that was factually “uncomplicated and unproblematic.” In this context I do not believe the military judge erred when he concluded that “in looking at the proceeding as a whole, the government did not expeditiously move this case along.”

Demand for a speedy trial

It is not disputed that Schuber made six demands for a speedy trial. The Court of Criminal Appeals questioned the sincerity of the speedy trial requests as they were included as part of Sehuber’s discovery requests and therefore found that the defense’s desire to move the case along was “debatable.” Schuber, No. 2010-14, slip op. at 7. In reaching this finding the lower court was making findings of fact, as it is permitted to do under Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2006). However, the principle stated in Cossio, 64 M.J. at 257, that a military judge “must be careful to restrict findings of fact to things, events, deeds or circumstances that ‘actually exist’ as distinguished from ‘legal effect, consequence or interpretation’ ” is equally applicable to a Court of Criminal Appeals when it engages in its fact-finding function. The lower court discounted Schu-ber’s requests for a speedy trial by speculating that the requests were somehow not serious. Schuber, No. 2010-14, slip op. at 7. However, the record reflects that the requests were made and without further evidence on the record, they must stand for what they are — six requests for a speedy trial.

Prejudice

Barker explained that prejudice “should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect.” Barker, 407 U.S. at 532, 92 S.Ct. 2182. Those three interests are: “(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.” Id. The Supreme Court noted that the most serious factor is the third, the possibility that the defense will be impaired by the delay. Id.
In the defense motion to dismiss, Schuber argued that he suffered anxiety and concern after missing the funerals of two close family members. The military judge found that though Schuber suffered “some prejudice” after missing the funerals of two family members and the anxiety of awaiting court-martial proceedings, he did not suffer prejudice “sufficient to violate the Sixth Amendment.” Nevertheless, properly recognizing that Sixth Amendment speedy trial standards do not dictate whether there has been an Article 10 speedy trial violation, the military judge went on to find a violation of Article 10.
As to the first Barker prejudice factor, it is clear that Schuber did not suffer oppressive incarceration, nor does he make that argu *192 ment. As to the third Barker prejudice factor, whether the defense was impaired by the delay, Sehuber concedes that he had not suffered “extensive prejudice to his defense” although he argues that he suffered “legitimate prejudice.” In this case, as in Mizgala, there is “no indication that his preparation for trial, defense evidence, trial strategy, or ability to present witnesses ... [was] compromised by the processing time in this case.” Mizgala, 61 M.J. at 129.
In regard to the second prong, the question as to whether the anxiety Sehuber suffered as a result of missing the funerals of family members constitutes sufficient prejudice for Article 10 purposes, presents a closer question. I agree with the military judge that Sehuber did suffer some anxiety in this regard but also agree with his determination that the anxiety did not reach the level of Sixth Amendment prejudice. As we have noted, however, the Sixth Amendment speedy trial determination does not necessarily dictate the result in an Article 10 analysis and further inquiry is necessary.
Here the record reflects that the Government took steps to minimize Schuber’s anxiety by granting his request for release from pretrial confinement and placing him on base restriction, as well as granting his request for leave to attend his grandfather’s funeral. While Sehuber was not released from confinement in time to make it to the funeral service, he was able to join his family in the days following the funeral. In light of these accommodations by the Government to minimize Schuber’s anxiety and concern, even under the more stringent Article 10 analysis, I do not believe that he suffered prejudice for Article 10 purposes.
While I would find that Schuber’s restriction to base constituted “arrest” for purposes of Article 10, in balancing the Barker factors in an Article 10 context, I would find that they weigh in favor of the Government and would affirm the CCA’s reversal of the military judge’s ruling on the Article 10 violation.

. The Court of Criminal Appeals noted that it would follow the decision in United States v. Munkus, 15 M.J. 1013 (A.F.C.M.R.1983), where the Air Force Court of Military Review included both the period of confinement and the period of base restriction in analyzing an Article 10 speedy trial claim.

. Even if we were to assume that the plain language of Article 9 was ambiguous as to the definition of arrest, the majority’s analysis requires an evaluation of whether regular duties are performed. Schuber, 70 M.J. at 185 (relying on United States v. Walls, 9 M.J. 88, 89 (C.M.A. 1980), wherein "appellant's commanding officer maintained the appellant in a full-duty status, but withdrew his pass privileges"). While the majority notes that "the restriction orders [did not] suspend Appellant from performing full, meaning normal, military duties," the record is silent as to whether Schuber did indeed resume his regular military duties. Id. at 187.

. The Court of Criminal Appeals also found that when "the appellee has been in nearly continuous confinement and restraint for 138 days and made a timely demand for a speedy trial, the length of delay is sufficient to trigger the full Barker inquiry." United States v. Schuber, No. 2010-14 2010, slip op. at 5 (A.F.Ct.Crim.App. Dec. 2, 2010) (unpublished).