*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HOLIFIELD, HACKEL, and BLOSSER
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Stephan HERNANDEZVALERO**
Private First Class (E-2), U.S. Marine Corps
*Appellant*

**No. 202200083**

_____

Decided: 12 October 2023

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Nicholas S. Henry

Sentence adjudged 30 November 2021 by a general court-martial convened at Marine Corps Base Camp Lejeune, North Carolina, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for 250 days, and a bad-conduct discharge.[1]

---

[1] Appellant was credited with 249 days of pretrial confinement.

For Appellant:
*Lieutenant Christopher B. Dempsey, JAGC, USN*

For Appellee:
*Major Candace G. White, USMC*
*Lieutenant Gregory A. Rustico, JAGC, USN*

_____

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under NMCCA
Rule of Appellate Procedure 30.2.**

_____

PER CURIAM:

Appellant was convicted, pursuant to his pleas, of one specification of violating a lawful general order and five specifications of assault, in violation of Articles 92 and 128, Uniform Code of Military Justice [UCMJ], for providing alcohol to fellow Marines who were under the age of 21, and for unlawfully touching five fellow Marines.[2]

In his sole assignment of error [AOE], Appellant asserts the Government violated Article 10, UCMJ, by taking 122 days to arraign him after placing him in pretrial confinement.[3] We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant was placed in pretrial confinement on 26 March 2021 after a fellow Marine in the same barracks alleged that Appellant had sexually assaulted him. Within a few days, seven other Marines alleged they were victims of sexual misconduct by Appellant. An additional Marine alleged that Appellant offered him alcohol even though he was under 21 years of age. All misconduct occurred in the barracks between February and March of 2021 while Appellant and the victims were students at the Marine Corps Engineer School [MCES].

_____

[2] 10 U.S.C. §§ 892, 928.

[3] This AOE is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

The Naval Criminal Investigative Service [NCIS] began investigating on 30 March 2021 (day four of confinement).[4] NCIS agents interviewed two victims that day and another victim the following day (day five). On day six, the Government preferred one specification against Appellant for providing alcohol to Marines under the age of 21 on divers occasions in violation of Article 92, UCMJ.

By day 13, NCIS agents had conducted initial interviews of, or obtained statements from, the nine named victims. From these interviews and statements, NCIS agents learned that Appellant and the named victims used Snapchat and other electronic communications extensively during their interactions. Appellant used his phone and electronic communications to offer the named victims alcohol, to show a photo of his penis to one of the named victims, and to solicit at least one named victim to engage in sexual acts. Additionally, before the initial report to NCIS, some of the victims communicated electronically about the allegations and about confronting Appellant. With this understanding, NCIS agents sent preservation requests to Snapchat for the relevant accounts on days 11 and 19. Appellant's commanding officer subsequently signed a Command Authorization for Search and Seizure for Appellant's iPhones. The Government did not ultimately seek a warrant for any Snapchat content.

On day 28, Appellant demanded a speedy trial in writing.

NCIS agents produced the first Report of Investigation for the case on day 39. Meanwhile, NCIS agents continued pursuing evidence of the electronic communications, interviewed eleven more potential witnesses, and re-interviewed one of the named victims. In many instances, the interviews were delayed because the interviewees had completed their entry-level training at MCES and moved to new duty stations across the globe. Additionally, pursuing an investigative lead, NCIS agents began working through the Mutual Legal Assistance Treaty [MLAT] process in an effort to obtain evidence from an unnamed Japanese messaging application used by some of the Marines.[5]

On day 61, the Government preferred additional charges against Appellant for providing alcohol to Marines under the age of 21, possession of alcohol in the barracks, sexual harassment, and sexual misconduct. On day 68, the Government contacted defense counsel to coordinate a preliminary hearing date.

---

[4] The day count is based on total days from commencement of pretrial confinement on 26 March 2021.

[5] The MLAT process provides the means to obtain the Japanese government's cooperation and assistance in obtaining evidence necessary for a criminal investigation or prosecution.

Civilian defense counsel proposed holding the hearing on day 77 or day 83. The Government was prepared to conduct the preliminary hearing on either of those days, but military defense counsel had a scheduling conflict for those days, so the parties agreed on day 84. A preliminary hearing in accordance with Article 32, UCMJ, was held on day 84. The preliminary hearing officer submitted his report on day 94, recommending the charges be referred to a general court-martial.

On day 97, the Government requested the convening authority approve 30 days of excludable delay for additional time to unlock Appellant's iPhone, and to interview witnesses who had completed entry-level training and executed orders to their permanent duty stations. The convening authority approved the request on day 102. The Government did not use all 30 days of the excludable delay because, on approximately day 108, NCIS determined current forensic tools could not unlock Appellant's iPhone.

The special court-martial convening authority forwarded the charges to the general court-martial convening authority on day 104. The general court-martial convening authority referred the charges and specifications to a general court-martial on day 112. The Government requested arraignment on day 119, but trial defense counsel were not available that day. Ultimately, Appellant was arraigned on day 122; civilian defense counsel agreed that the three days delay from day 119 to day 122 would be attributable to the defense.

Appellant subsequently filed a motion to dismiss the charges due to a violation of his speedy trial right under Article 10, UCMJ, arising from the pre-arraignment delay.[6] Thereafter, the parties argued the motion before the military judge who took the issue under advisement.[7]

Two months later, pursuant to a negotiated plea agreement, Appellant pleaded guilty to one specification of violating a lawful general order and five specifications of assault consummated by a battery. In accordance with the plea agreement, the Government withdrew and dismissed the remaining charges pending against Appellant. Additionally, per the plea agreement, Appellant agreed to "waive all motions except those that are non-waivable pursuant to R.C.M. 705(c)(1)(B) or otherwise," a provision verified by the military

---

[6] Appellant expressly did not challenge post-arraignment delay. R. at 117.

[7] R. at 98-117.

judge during his colloquy with Appellant about the plea agreement.[8] When discussing this matter on the record, neither Appellant nor trial defense counsel raised the previously argued (but yet-undecided) Article 10 motion.[9]

On 23 March 2022, the military judge verified the record of trial as complete. On 29 March 2022, the military judge signed a new verification of the record of trial, noting that the record of trial now included Appellant's clemency matters and the convening authority's corrected action. The certified record of trial does not include a ruling by the military judge by way of an exhibit—or even by way of discussion in the certified record—regarding resolution of Appellant's Article 10 speedy trial motion.

## II. DISCUSSION

On appeal to this Court, Appellant claims he was denied his right to a speedy trial under Article 10 because the Government failed to use reasonable diligence in bringing him to trial in a timely manner. Appellant argues that the factors described by the Supreme Court in *Barker v. Wingo* weigh heavily in his favor.[10]

"[A] litigated speedy trial motion under Article 10 is not waived by a subsequent unconditional guilty plea."[11] We review Article 10, UCMJ, speedy trial claims de novo.[12] Article 10 "imposes [on the Government] a more stringent speedy-trial standard than that of the Sixth Amendment."[13] Article 10 demands that when a servicemember is placed in pretrial confinement, "immediate steps shall be taken . . . to try the person or to dismiss the charges and

---

[8] App. Ex. XCI at 15; R. at 595.

[9] The record contains no indication the military judge ever ruled on Appellant's Article 10 Motion.

[10] *Barker v. Wingo*, 407 U.S. 514 (1972).

[11] *United States v. Mizgala*, 61 M.J. 122, 127 (C.A.A.F. 2005).

[12] *United States v. Cooper*, 58 M.J. 54, 58 (C.A.A.F. 2003).

[13] *United States v. Kossman*, 38 M.J. 258, 259 (C.M.A. 1993).

release the person."[14] In reviewing Article 10 claims, courts do not require "constant motion" from the Government, but do require "reasonable diligence in bringing the charges to trial."[15]

"Our framework to determine whether the Government proceeded with reasonable diligence includes balancing the following four factors: (1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for speedy trial; and (4) prejudice to the appellant."[16] No single factor is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial."[17] The *Barker* factors are not "talismanic" and "must be considered together with such other circumstances as may be relevant."[18]

In conducting our review, we ordinarily give substantial deference to the military judge's findings of fact, reversing only if they are clearly erroneous.[19] Here, however, we have no ruling from the military judge and, therefore, are making our own findings based on the record before us. We assume, without deciding, that even absent a ruling, Appellant preserved his Article 10 claim.[20]

## A. The Length of Delay was Not Unreasonable

"The first factor under the *Barker* analysis is the length of the delay which is to some extent a triggering mechanism, and unless there is a period of delay

---

[14] Article 10(b)(1), UCMJ; 10 U.S.C. § 810(b)(1).

[15] *Mizgala*, 61 M.J. at 127 (quoting *United States v. Tibbs*, 15 C.M.A. 350, 353 (C.M.A. 1965)).

[16] *United States v. Wilson*, 72 M.J. 347, 351 (C.A.A.F. 2013) (quoting *Mizgala*, 61 M.J. at 129) (internal citation omitted).

[17] *Wilson*, 72 M.J. at 351 (quoting *Barker*, 407 U.S. at 533).

[18] *Id.* (quoting *Barker*, 407 U.S. at 533).

[19] *Mizgala,* 61 M.J. at 127.

[20] We note that, in accepting Appellant's guilty plea, the military judge indicated that the parties had litigated a number of motions and that he had ruled on them. R. at 595. Yet, no ruling on Appellant's Article 10 motion was included in the certified record of trial. We remind military judges they must rule before entry of pleas on any motion made before entry of pleas and "shall state the essential findings on the record" when "factual issues are involved in determining the motion." Rule for Courts-Martial [R.C.M.] 905(d). Assuming the military judge ruled on Appellant's motion, rather than remand this case for the military judge to correct his defective verification of the record of trial by including his ruling on the speedy trial motion, we elect to resolve Appellant's AOE here.

that appears, on its face, to be unreasonable under the circumstances there is no necessity for inquiry into the factors that go into the balance."[21] "[T]he test is reasonable diligence, not textbook prosecution."[22] Under the circumstances of this case—an investigation involving nine victims (many of whom were represented by victims legal counsel) and more than ten additional witnesses who were dispersed globally shortly after the investigation began, electronic communications requiring preservation requests and potential warrants for multiple accounts, and an attempted search of a locked iPhone with ever-changing forensic tool technology—119 days of delay is not facially unreasonable. This factor favors the Government.

## B. The Reasons for the Delay Favor the Government

"Closely related to length of delay is the reason the [G]overnment assigns to justify the delay. Here, too, different weights should be assigned to different reasons."[23]

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the Government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the Government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.[24]

The seriousness of the offense, complexity of the case, and availability of proof are among the circumstances courts consider when determining if delay is reasonable. Thus, the "'the delay that can be tolerated for an ordinary street crime is considerably less' than that which can be tolerated for more serious, complex cases."[25]

---

[21] *Wilson*, 72 M.J. at 351 (citing *United States v. Cossio*, 64 M.J. 254, 257 (C.A.A.F. 2007)).

[22] *United States v. Schuber*, 70 M.J. 181, 188 (C.A.A.F. 2011).

[23] *Wilson,* 72 M.J. at 352 (citing *Barker*, 407 U.S. at 531).

[24] *Id*. (quoting *Barker*, 407 U.S. at 531).

[25] *United States v. Lin*, 78 M.J. 850, 860 (N-M. Ct. Crim. App. 2019) (quoting *United States v. Cooley*, 75 M.J. 247, 260 (C.A.A.F. 2016)).

In this case, the reasons for the delay weigh in favor of the Government. The delay was attributable to several factors: the complexity of the investigation; the seriousness of the offenses, including multiple allegations of sexual misconduct; and attempts to obtain evidence contained in a variety of electronic communications platforms. The Government "has the right (if not the obligation) to thoroughly investigate a case before proceeding to trial."[26] On day 97, the Government requested and was granted 30 days of excludable delay to conduct additional witness interviews and to continue attempts to unlock Appellant's iPhone. However, as soon as the Government learned that unlocking the iPhone was not possible, it moved forward to referral prior to the expiration of those 30 days.[27] Thus, we find that the many investigative steps taken in this case were necessary, particularly given the nature of the charges.

## C. Appellant Made a Demand for Speedy Trial

Appellant demanded speedy trial after only 28 days in confinement; this fact weighs in his favor.

## D. Appellant Suffered No Prejudice

Appellant now asserts that his pretrial confinement was oppressive and that the delay further prejudiced him due to anxiety and an impaired defense.[28] We disagree. Despite Appellant's characterization on appeal, based on evidence in the record, there was nothing abnormal about the nature of Appellant's pretrial confinement. Likewise, there is no evidence that he suffered anxiety beyond the baseline experienced by all detainees. Finally, to support his claim that his defense was impaired by the delay, Appellant ironically refers to the high number of victims and collateral witnesses, and their dispersed locations—the same complications that caused the Government's delay.[29] This factor weighs in the Government's favor.

---

[26] *Cossio*, 64 M.J. at 258.

[27] Our discussion of excludable delay is included only as an indicator that the Government was diligently moving toward trial rather than causing unreasonable delay. This discussion shall not be construed to indicate Article 10 provides for relieving the Government of the burden of proving it proceeded with reasonable diligence when an accused is in pretrial confinement. Even where delay is excluded by the convening authority or military judge, the Government must still show reasonable diligence under an Article 10 analysis.

[28] Appellant Brief at 22-25.

[29] *Id*. at 24-25.

Taking the *Barker* factors as a whole, we find that the Government exercised reasonable diligence in this case and that Appellant's speedy trial rights under Article 10, UCMJ, were not violated.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[30]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[30] Articles 59 & 66, UCMJ.