# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

## Senior Airman CODY A. BURCKHARDT
### United States Air Force

## ACM 38625

## 12 June 2015

Sentence adjudged 27 February 2014 by GCM convened at Dyess Air Force Base, Texas. Military Judge: Natalie D. Richardson (arraignment), William C. Muldoon (sitting alone).

Approved Sentence: Dishonorable discharge, confinement for 49 months, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant: Major Christopher D. James and Brian L. Mizer, Esquire.

Appellate Counsel for the United States: Captain Richard J. Schrider and Gerald R. Bruce, Esquire.

Before

MITCHELL, SANTORO, and WEBER
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

SANTORO, Judge:

A military judge sitting as a general court-martial convicted the appellant, pursuant to his conditional guilty pleas, of eight specifications of willful dereliction of duty, three specifications of making a false official statement, and nine specifications of aggravated assault in violation of Articles 92, 107, and 128, UCMJ, 10 U.S.C. §§ 892, 907, 928. The conditional guilty plea purported to preserve for appellate review the military judge's denial of a motion to dismiss the aggravated assault charge and

specifications for failure to state offenses. Pursuant to the terms of a pretrial agreement, the convening authority withdrew one additional specification of dereliction of duty, one specification of making a false official statement, and a charge and specification alleging obstruction of justice. The adjudged and approved sentence was a dishonorable discharge, confinement for 49 months, forfeiture of all pay and allowances, and reduction to E-1.[1]

In his initial assignment of errors, the appellant argued that (1) he received ineffective assistance of counsel, (2) he was denied his right to a speedy trial, and (3) Article 128, UCMJ, is unconstitutional as applied to him. While his case was pending before this court, our superior court decided *United States v. Gutierrez*, 73 M.J. 172 (C.A.A.F. 2015). In light of *Gutierrez* we specified the following issues: (1) whether there was such a dramatic change to the nature of the offenses that there was a "mutual misunderstanding" of the maximum sentence such that our court should find the pleas to be improvident and allow the appellant to withdraw the plea or request some alternative remedial relief, (2) whether our court should find provident the appellant's pleas to aggravated assault with means likely to produce death or grievous bodily harm, (3) whether our court should affirm the lesser included offense of assault consummated by battery for Charge III and its specifications if our court finds the pleas improvident, and (4) whether our court should reassess the sentence or order a sentence rehearing if we determine for Charge III that the pleas to the greater offense were improvident.

*Background*

The appellant was diagnosed as having the Human Immunodeficiency Virus (HIV) in August 2011. On 1 September 2011, a military medical provider counseled him about his condition and the responsibilities of military members who are HIV positive. Among those responsibilities was that the appellant "engage only in protected relations, i.e., use a condom" and that he "always verbally inform [his] sexual partners" of his status "prior to engaging in any intimate sexual behavior." These requirements were documented on an Air Force Form 3845, which the appellant signed.

Between on or about 1 October 2011 and on or about 20 May 2013, the appellant knowingly engaged in unprotected sexual activity on multiple occasions with nine different men, eight of whom he failed to tell about his HIV status. Some of his partners were military; some were civilian. He met many of them online using dating sites dedicated to those looking for same-sex partners. None of the eight men would have engaged in unprotected sexual activity with the appellant had they known of his HIV status. When investigators interviewed the appellant concerning his activities, he falsely stated that he had informed several partners about his status.

---

[1] The pretrial agreement's limitation to no more than seven years' confinement had no impact on the approved sentence.

*Speedy Trial*

The appellant argues, as he did at trial, that he was denied his right to a speedy trial under Articles 10 and 33, UCMJ, 10 U.S.C. §§ 810, 833. The military judge made findings of fact concerning the procedural history which are not contested on appeal, are amply supported by the record, and which we adopt as our own.

On 21 May 2013, the appellant was ordered into pretrial confinement. Charges were preferred on 27 June 2013. The Article 32, UCMJ, 10 U.S.C. § 832, investigation was initially scheduled for 19 July 2013, but on 17 July 2013 trial defense counsel informed the investigating officer that he was in trial and would be unavailable. The investigation was rescheduled for 23 July 2013 and concluded the same day. The investigating officer submitted his report to the special court-martial convening authority (SPCMCA) on 30 July 2013.

On 24 July 2013, defense counsel requested an inquiry into the appellant's mental capacity pursuant to Rule for Courts-Martial (R.C.M.) 706. The SPCMCA granted the request and, due to reduced staffing at the medical group, the R.C.M. 706 inquiry was not completed until 16 August 2013.

Although the Article 32, UCMJ, investigation had been completed, the staff judge advocate (SJA) and the SPCMCA delayed forwarding the charges to the general court-martial convening authority (GCMCA) until the R.C.M. 706 inquiry was complete. The charges were ultimately forwarded to the GCMCA on 27 August 2013 and referred to trial on 9 September 2013.

Arraignment occurred on 27 September 2013 for a scheduled trial date of 18 November 2013, the earliest date military trial defense counsel were available. On 7 November 2013, trial defense counsel filed a motion to dismiss alleging a violation of the appellant's right to a speedy trial. The filing of the motion with the military judge was the appellant's first assertion of his speedy trial right.

On 14 November 2013, the appellant retained a civilian defense counsel who promptly filed a motion to continue. Over government objection, the military judge granted the appellant's request and continued the case to 24 February 2014.

At trial, the appellant argued that his Article 33, UCMJ, speedy trial right was violated because the charges were not referred to the GCMCA within eight days of his initial confinement nor were the reasons for the delay adequately explained. He additionally argued that his right to a speedy trial under Article 10, UCMJ, was violated because 282 days elapsed between his placement in pretrial confinement and trial. The military judge denied the motion.

A plea of guilty which does not as a condition preserve a speedy trial claim "waives any speedy trial issue" under R.C.M. 707 or the Sixth Amendment. R.C.M. 707(e); *United States v. Mizgala*, 61 M.J. 122, 125 (C.A.A.F. 2005). However, a litigated speedy trial motion under Article 10, UCMJ, is not waived by a subsequent unconditional guilty plea. *Id.* at 127. The government urges us to hold that by entering a pretrial agreement that called for him to waive all waivable motions, the appellant has waived appellate review of this claim. We see nothing in *Mizgala* that would suggest such a result; to the contrary, we believe *Mizgala*'s holding is clear: "In view of the legislative importance given to a speedy trial under the UCMJ and the unique nature of the protections of Article 10 . . ., we believe that where an accused unsuccessfully raises an Article 10 issue and thereafter pleads guilty, waiver does not apply." *Mizgala*, 61 M.J. at 126.

We therefore first turn to the appellant's claim that Article 33, UCMJ, provides him a statutory right to a speedy trial. Article 33, UCMJ, says,

> When a person is held for trial by general court-martial the commanding officer shall, within eight days after the accused is ordered into arrest or confinement, if practicable, forward the charges, together with the Investigation and allied papers, to the officer exercising general court-martial jurisdiction. If that is not practicable, he shall report in writing to that officer the reasons for delay.

Our superior court has held that the "sole statutory basis" for a right to speedy trial in the military justice system is Article 10, UCMJ. *United States v. Nelson*, 5 M.J. 189 (C.M.A. 1978). However, in a footnote to that very statement, the *Nelson* court wrote that although Article 33 was simply a procedural mandate that embodied no substantive rights or protections, deviation "must be measured for specific prejudice to the accused." *Id.* at 190 n.1.

Although we question why we would test for prejudice when there is no substantive right or protection to enforce, we need not resolve the seeming inconsistency. Our superior court has also been clear that even if Article 33, UCMJ, is violated, it "does not prescribe dismissal of the charge for failure to submit the report." *United States v. Hawes*, 18 U.S.C.M.A. 464, 468 (C.M.A. 1969). Instead, because our review of the appellant's Article 10, UCMJ, speedy trial claim includes a prejudice analysis, we conclude that a violation of the Article 33, UCMJ, eight-day requirement is simply one additional factor we may consider in our Article 10, UCMJ, analysis.

When an accused is held in pretrial confinement, the government must show reasonable diligence in moving toward trial. Article 10, UCMJ; *United States v. Schuber*, 70 M.J. 181, 188 (C.A.A.F. 2011). Alleged violations of Article 10, UCMJ, are

evaluated using the four factors identified in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *Mizgala*, 61 M.J. at 129. We review de novo whether the appellant was denied the right to a speedy trial as a matter of law and are bound by the facts found by the military judge unless they are clearly erroneous. *Barker*, 407 U.S. at 530.

We will assume without deciding that 282 days from imposition of pretrial confinement to trial is facially unreasonable and a factor that weighs in the appellant's favor. However, when we examine the reasons for the delay, we first note that the final 102 days before trial resulted from the appellant's motion to continue—a motion he filed only seven days after asserting his right to speedy trial.[2] With respect to the reasons for the remaining 180 days, we have considered, among other factors, the number of victims and the time it took to identify, locate, and interview them; the 19 days to identify an Article 32, UCMJ, investigating officer; the 23 days to complete the R.C.M. 706 inquiry; the 16 days from completion of the R.C.M. 706 inquiry until forwarding to the GCMCA; the 14 days from referral to docketing; and the 52 days between arraignment and the initial trial date; as well as the reasons for each of these periods of delay. On balance, we conclude that the overall delay was reasonable under the circumstances of this complex case. This factor weighs in the government's favor.

As noted above, the appellant did not make a speedy trial demand until he had been in pretrial confinement for 170 days and, even after making the speedy trial demand, he immediately requested that his trial be delayed for 102 days. This factor weighs in the government's favor.

Finally, the appellant asserts that he was prejudiced by the delay because he was forced to spend additional time in pretrial confinement in a civilian confinement facility, that his HIV medication regimen was disrupted on two occasions for a total of 11 days, and that the civilian and military jailors showed deliberate indifference to his medical needs. There is scant evidence in the record concerning the conditions in the confinement facility or whether the jailors were deliberately indifferent to the appellant's medical needs, although the disruption of his treatment regimen was established. This factor weighs slightly in the appellant's favor.

We do not apply these factors in a vacuum but must also look at the entire proceeding as a whole, for the essential requirement of Article 10, UCMJ, is orderly expedition of the case, not mere speed. *Mizgala*, 61 M.J. at 129. While there were discrete brief periods of what might be considered avoidable delay, the standard of

---

[2] In our analysis of the reason for this 102-day delay, we note, as did the military judge, that the government may have been dilatory in submitting defense expert witness requests to the general court-martial convening authority (GCMCA). Nevertheless, the record is clear that the basis for the continuance was newly-hired defense counsel's availability and need to review the evidence to prepare for trial.

diligence under which we review claims of a denial of speedy trial under Article 10 "is not constant motion, but reasonable diligence in bringing the charges to trial." *Id.* at 127 (quoting *United States v. Tibbs*, 35 C.M.R. 322, 325 (C.M.A. 1965)) (internal quotation marks omitted). "Short periods of inactivity are not fatal to an otherwise active prosecution." *Id.* Having applied and balanced these factors, and further considering the entire record, we find no violation of Article 10, UCMJ.[3]

*The Impact of* Gutierrez

*1. Procedural History*

The appellant was charged with nine specifications of aggravated assault by engaging in unprotected sexual activity while infected with HIV. One element of the offenses required proof that the risk of HIV transmission was "likely" to produce death or grievous bodily harm. The law in effect at the time of the appellant's trial regarding assault through exposure to HIV was that the "risk of harm need only be 'more than merely a fanciful, speculative, or remote possibility.'" *United States v. Weatherspoon*, 49 M.J. 209, 211 (C.A.A.F. 1998) (quoting *United States v. Klauck*, 47 M.J. 24, 25 (C.A.A.F. 1997)); *United States v. Joseph*, 37 M.J. 392, 396–97 (C.M.A. 1993); *United States v. Johnson*, 30 M.J. 53, 57 (C.M.A. 1990).

Prior to entry of pleas, trial defense counsel filed a motion to dismiss the aggravated assault charge and specifications, arguing that they failed to state offenses. Each specification alleged that at a certain place and time, the appellant did "commit an assault upon [each victim] by engaging in unprotected sexual relations with him and without informing him that [the appellant] was infected with the Human Immunodeficiency Virus (HIV) with a means likely to produce death or grievous bodily harm, to wit: the bodily fluids of [the appellant] which were infected with the Human Immunodeficiency Virus (HIV)."

The appellant's theory was that because his viral load[4] was so low, he was incapable of transmitting the condition to his partners. In support of that theory he offered the testimony of an expert in infectious diseases who testified that the appellant's condition was effectively managed by medication and that the risk of transmission was as high as 1 in 9,250 to as low as "virtually none," depending upon factors including the type of sexual activity involved and how long the appellant had been taking his medication.

---

[3] The appellant alternatively requests that we order a hearing pursuant to *United States v. DuBay*, 37 C.M.R. (C.M.A. 1967), to enable him to develop more fully his claim of prejudice. We decline to do so. The appellant was aware of his need to establish prejudice in support of his speedy trial motion as well as the conditions of his pretrial confinement at the time he litigated this motion at trial.

[4] The "viral load" is the level of HIV in the blood and is described as the number of copies of HIV ribonucleic acid (RNA) in a milliliter of blood.

The military judge denied the motion. In his ruling, he noted that although styled as a motion to dismiss for failure to state an offense, the motion argued three separate bases: failure to state an offense because the likelihood of transmission was low, public policy (the White House's AIDS strategy suggested a non-criminal approach), and improper referral because there was no scientific evidence offered during the Article 32, UCMJ investigation. The military judge concluded that (1) each specification stated an offense, (2) White House AIDS policy did not alter the provisions of the UCMJ, and (3) there was no requirement that scientific evidence be presented to the convening authority to support referral. The military judge further noted that the defense's true attack was a challenge to the sufficiency of the prosecution's evidence, not whether the specifications stated offenses.

Immediately after the military judge denied the motion to dismiss, the appellant pled guilty to a majority of the charges and specifications. He did so pursuant to a conditional pretrial agreement (PTA) with the convening authority. *See* (R.C.M.) 910(a)(2). One of the terms of the PTA purported to preserve for appellate review "all issues raised in the Defense Motion to Dismiss."

The military judge understandably questioned this term of the PTA, noting that a motion to dismiss for failure to state an offense was a non-waivable motion that would be preserved for appellate review even in the absence of a conditional guilty plea. Trial defense counsel responded that they understood but wanted to preserve the "public policy prongs." The military judge further warned the appellant and counsel that "this is somewhat novel and the appellate court could say, 'no.'" The military judge provided the appellant time to confer with counsel, after which the appellant himself affirmed that he still wanted to plead guilty notwithstanding the military judge's warning that a plea might vitiate his ability to challenge the evidence on appeal.

We ordered trial defense counsel to submit declarations in response to the appellant's assertion that his counsel were ineffective. Both trial defense counsel stated that the appellant told them that although he had two desires—a pretrial agreement that would limit potential confinement and a motion to challenge the legality of the aggravated assault charge—his primary goal was to limit confinement. The appellant was aware that he was facing a maximum possible sentence of 56 years and that the military judge detailed to his case had previously adjudged an eight-year sentence in a case involving similar charges. Trial defense counsel had familiarized themselves with the facts of the eight-year case and felt that the appellant's case would be seen as more egregious.

Trial defense counsel also submitted a memorandum signed by the appellant prior to his guilty plea summarizing their discussions about the pretrial agreement. In that memorandum, the appellant wrote, "At my request, I will be pleading guilty to most of

the charges and specifications in accordance with a PTA that caps the sentence at 7 years. . . . I have requested that [defense counsel] file a motion relating to the risk of harm of transfer of HIV and do a conditional PTA in order to potentially preserve that issue for appeal. However, my attorneys have advised me that the odds of the military appeals court reviewing this on appeal are lower with a guilty plea than in a litigated case, I understand the risk and I do choose to plead guilty in accordance with the pretrial agreement."

While this case was pending before us, our superior court decided *Gutierrez*, 73 M.J. 172, the very case trial defense counsel had discussed with the appellant prior to his decision to enter into the pretrial agreement and plead guilty. In *Gutierrez*, our superior court concluded that its prior precedent relating to HIV exposure erroneously established a test that was inconsistent with the plain language of Article 128, UCMJ. The evidence in *Gutierrez* was that his risk of transmitting HIV to his partner was 1 in 500 and only "remotely possible." Our superior court held that a 1-in-500 chance of transmission was not "likely" to result in death or grievous bodily harm and set aside the aggravated assault convictions.

*2. Providence of Guilty Pleas to Aggravated Assault Specifications*

We review a military judge's decision to accept a guilty plea for an abuse of discretion. In doing so, we apply a "substantial basis" test and consider whether there is evidence in the record that would raise a substantial question about the appellant's plea. *United States v. Inabinette*, 66 M.J. 320 (C.A.A.F. 2008). Because the instant case is on direct review, we apply *Gutierrez* when conducting this analysis. *United States v. Mullins*, 69 M.J. 113, 116 (C.A.A.F. 2010) ("[O]n direct review, we apply the clear law at the time of appeal, not the time of trial.").

Because the uncontroverted evidence is that the appellant's risk of HIV transmission was even lower then Gutierrez's, we conclude that the record before us clearly demonstrates that there is a substantial basis in law for questioning his plea. *See United States v. Shavrnoch*, 49 M.J. 334, 338–39 (C.A.A.F. 1998) (stating that a conviction based upon a legal standard that does not constitute an offense is legally insufficient).

Having found the appellant's pleas to aggravated assault improvident, we next consider whether we can (or should) affirm findings of guilt to the lesser-included offense of assault consummated by a battery. 10 U.S.C. § 859(b).

In *Gutierrez*, after setting aside the aggravated assault convictions, our superior court instead affirmed convictions for assault consummated by a battery as lesser-included offenses. In doing so, our superior court cited a 1998 Canadian case for the proposition that Gutierrez's partners could not consent to sexual activity because there

could be no true consent without disclosure of one's HIV status. *Gutierrez*, 74 M.J. at 68. While we question how on the one hand *Gutierrez* could find the risk of transmission so unlikely as to preclude an aggravated assault conviction yet sufficiently material to require informed consent, we need not resolve that issue.

This case is distinguishable from *Gutierrez* in that Gutierrez pleaded not guilty and was convicted after a fully-litigated trial. Because the court-martial found him guilty of aggravated assault, it necessarily also found him guilty of the lesser-included offense of assault consummated by a battery. Here, the appellant pled guilty to aggravated assault because he had negotiated a pretrial agreement (PTA) that limited his confinement, but a condition of which was that he plead guilty to the greater offense.

There is a vast difference in the maximum punishment for aggravated assault as compared to assault consummated by a battery (a dishonorable discharge and 27 years' confinement verses a bad-conduct discharge and 54 months' confinement).[5] The appellant's plea—and accompanying judicial admissions—were premised on his expressed desire to avoid lengthy incarceration. Had he known that his maximum exposure was 23 years less than it actually was, his calculus may well have been different. We conclude that even a plea to the lesser-included offense would be improvident because of the misunderstanding of the maximum punishment to which he would be subjected. *United States v. Walker*, 34 M.J. 264, 266 (C.M.A. 1992). Therefore the findings of guilty of Charge III and its specifications are set aside.

*3. Effect of Improvident Pleas on Pretrial Agreement*

Had the appellant been convicted on all charged offenses, he faced a maximum sentence of 56 years' confinement. Twenty-seven of those 56 years were attributable to the aggravated assault specifications. As noted above, the record establishes that the appellant's primary motivation to plead guilty was to limit his potential term of confinement.

The appellant requests that we authorize a rehearing as to sentence on the remaining charges and specifications. Neither he nor the government has asked to be released from the PTA. This is consistent with the conditional guilty plea. The appellant told the military judge that he wanted to plead guilty but preserve for appellate review only the viability of the aggravated assault specifications.

We considered whether the appropriate result in this case would allow the appellant to withdraw from his plea agreement and begin anew. *See, e.g., United States*

---

[5] The maximum punishment for aggravated assault includes a dishonorable discharge and 3 years of confinement for each specification; with nine specifications, the maximum period of confinement is 27 years. The maximum punishment for assault consummated by a battery includes a bad-conduct discharge and 6 months of confinement for each specification; with nine specifications, the maximum period of confinement is 54 months.

*v. Perron*, 58 M.J. 78 (C.A.A.F. 2003) (misunderstanding of a material term of the agreement); *United States v. Mincey*, 42 M.J. 376 (C.A.A.F. 1995) (misunderstanding of maximum punishment). However, we are mindful that imposing alternate relief upon an appellant against his will may violate the Due Process Clause of the Fifth Amendment. *Perron*, 58 M.J. at 78. Therefore, we must determine the impact of the improvident guilty pleas on the appellant's sentence.

*4. Sentence Reassessment*

This court has "broad discretion when reassessing sentences." *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). Our superior court has repeatedly held that if we "can determine to [our] satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986). This analysis is based on a totality of the circumstances with the following as illustrative factors: dramatic changes in the penalty landscape and exposure, the forum, whether the remaining offenses capture the gravamen of the criminal conduct, whether significant or aggravating circumstances remain admissible and relevant, and whether the remaining offenses are the type that we as appellate judges "have experience and familiarity with to reliably determine what sentence would have been imposed at trial." *Winckelmann*, 73 M.J. at 16.

Applying the *Winckelmann* factors, we are confident that we can reassess the sentence. The sentencing authority was a military judge. As appellate military judges, we are familiar with the sentences generally imposed by military judges for the remaining Article 92 and 107, UCMJ, violations. Although the penalty landscape has changed with the setting aside of the aggravated assault specifications, the remaining specifications carry a maximum sentence of a dishonorable discharge and 19 years' confinement. The nature and purpose of the orders the appellant violated would have remained admissible and properly considered in aggravation. Finally, we note that the military judge was aware of the extraordinarily small likelihood that the appellant's conduct would actually have transmitted the virus and that none of his partners was infected as a result of the appellant's conduct. We are confident that absent the aggravated assault specifications, the adjudged sentence would have been no less than a bad-conduct discharge and confinement for 36 months.

*Effective Assistance of Counsel*

The appellant also argues that his trial defense counsel gave constitutionally deficient advice when they failed to inform him that, by pursuing a conditional guilty

plea, he was forfeiting appellate consideration of the legal effect of the risk of harm of transferring HIV. Our setting aside Charge III and its specifications moots this issue.[6]

## *Conclusion*

The findings of guilty of Charge III and its specifications are set aside, and the charge and those specifications are dismissed. We affirm only so much of the sentence as provides for a bad-conduct discharge and confinement for 36 months. The remaining findings and the sentence, as reassessed and modified, are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant remains. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).



FOR THE COURT

STEVEN LUCAS
Clerk of the Court

---

[6] Had the appellant's trial defense counsel not successfully negotiated the pretrial agreement and had the appellant thereafter been convicted contrary to his pleas, *Gutierrez*'s lesser-included-offense analysis would expose the appellant to a maximum sentence 54 months' higher than under our disposition of this case. Therefore, assuming arguendo that trial defense counsel's advice concerning the effects of the pretrial agreement was flawed, we discern no prejudice. *United States v. Saintaude*, 61 M.J. 175, 183 (C.A.A.F. 2005).