# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 38980**

———————————

### UNITED STATES
*Appellee*

**v.**

### Scott A. PENDERGRASS
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 21 August 2017

———————————

*Military Judge:* Shaun S. Speranza (arraignment); Matthew P. Stoffel.

*Approved sentence:* Dishonorable discharge, confinement for 10 years, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 5 August 2015 by GCM convened at Beale Air Force Base, California.

*For Appellant:* Major Mark C. Bruegger, USAF; Major Jeffrey A. Davis, Jr., USAF; James S. Trieschmann, Jr., Esquire.

*For Appellee:* Captain Matthew L. Tusing, USAF; Gerald R. Bruce, Esquire.

Before MAYBERRY, JOHNSON, and MINK, *Appellate Military Judges.*

Judge MINK delivered the opinion of the court, in which Senior Judges MAYBERRY and JOHNSON joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

MINK, Judge:

A military judge sitting as a general court-martial convicted Appellant, consistent with his pleas, of violating a lawful general order in violation of Article

92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892; assault consummated by a battery upon a child under 16 years of age in violation of Article 128, UCMJ, 10 U.S.C. § 928; and wrongful possession, possession with intent to distribute, and distribution of child pornography on divers occasions, in violation of Article 134, UCMJ, 10 U.S.C. § 934. The adjudged sentence consisted of a dishonorable discharge, ten years of confinement, forfeiture of all pay and allowances, and reduction to E-1. The convening authority approved the sentence as adjudged.

Appellant raises four issues on appeal: (1) whether the military judge erred in finding no violation of Appellant's right to a speedy trial; (2) whether Appellant is due relief for unreasonable post-trial delay; (3) whether the military judge erred when he merged certain specifications for sentencing instead of dismissing the unreasonably multiplied offenses; and (4) whether Appellant is entitled to relief for unlawful discrimination suffered while in post-trial confinement.[1] Finding no error materially prejudicial to a substantial right of Appellant, we affirm the findings and sentence.

## I. BACKGROUND

Appellant, a 30-year-old Staff Sergeant, was deployed to Kandahar Air Base, Afghanistan from 20 September 2013 until 19 May 2014. While in Afghanistan, Appellant received and possessed two images of child pornography in violation of General Order 1B, paragraph 2(e), which prohibited the possession of sexually explicit material in the United States Central Command area of responsibility.

---

[1] This allegation is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Appellant asserts he was subjected to unlawful discrimination based on his sexual preference when he was housed with certain prisoners and segregated from other prisoners while in post-trial confinement at the Naval Consolidated Brig Miramar (NCBM). As a result, Appellant asserts he suffered unduly harsh post-trial confinement warranting relief. However, an affidavit submitted to the court from the Commanding Officer of NCBM established that an inmate's sexual preference is not considered when making housing assignments at the prison. Based on the uncontroverted facts before the court—as opposed to Appellant's unsupported allegation—we decline to exercise our authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c), to grant any relief based on this allegation. Even though Appellant submitted complaints to both NCBM's Equal Opportunity representative and the Navy Inspector General regarding this allegation, we also deny relief given the absence of any indication in the record that Appellant "has exhausted the prisoner-grievance system…and petitioned for relief under Article 138, UCMJ, 10 USC § 938 [2000]." *See United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (quoting *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997)) (ellipsis in original).

On or about 4 July 2014, while visiting his stepsister's home, Appellant was sleeping in the same room as his stepsister's five-year-old son, JSP. Appellant and JSP were sleeping in bunk beds, with Appellant on the lower bunk and JSP on the top bunk. At some point during the night, Appellant stood on the bottom bunk and tried to roll JSP, who was sleeping on his stomach, over onto his back by touching him on his hip. Appellant stopped touching JSP when he stirred and it appeared he might wake up.

Between 1 December 2012 and 17 December 2014, Appellant distributed child pornography on multiple occasions to at least five different individuals. During this timeframe, Appellant also possessed multiple images of child pornography which he intended to distribute to other individuals but did not.

## II. DISCUSSION

### A. Pretrial Delay

Appellant alleges a violation of his right to a speedy trial under Article 10, UCMJ, 10 U.S.C. § 810. Appellant specifically argues that the military judge erred when he found the Government acted with "reasonable diligence" in bringing Appellant to trial in accordance with Article 10, UCMJ.

Appellant was placed in pretrial confinement on 24 December 2014, arraigned on 10 April 2015, and his trial began on 3 August 2015. A total of 223 days elapsed between the time Appellant was placed in pretrial confinement and the date his trial began. Appellant focuses on three specific delays while he was in pretrial confinement in arguing that his right to a speedy trial under Article 10 was violated: the approximate six weeks while the Government was waiting on the forensic analysis of Appellant's computer; the 30-day period prior to preferral of charges when the Government had sufficient charging information; and the period of time between the referral of the charges and the start of trial.

We review the issue of whether the Government violated Article 10, UCMJ, de novo, giving substantial deference to a military judge's findings of fact. *United States v. Mizgala*, 61 M.J. 122, 127 (C.A.A.F. 2005).

When a servicemember is placed in pretrial confinement, "immediate steps shall be taken" to inform the accused of the charges and to either bring the accused to trial or dismiss the charges. Article 10, UCMJ, 10 U.S.C. § 810. Unlike Rule for Courts-Martial (R.C.M.) 707, Article 10 does not provide a specific timeframe within which the accused must be brought to trial. Article 10 creates "a more stringent speedy trial standard than the Sixth Amendment."[2]

---

[2] U.S. CONST. amend. VI.

*United States v. Cossio*, 64 M.J. 254, 257 (C.A.A.F. 2007). Nonetheless, the factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), that are used to analyze Sixth Amendment speedy trial issues "are an apt structure for examining the facts and circumstances surrounding an alleged Article 10 violation." *Mizgala*, 61 M.J. at 127. Those factors are: "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *Id.* at 129.

While the *Barker* factors are relevant to our Article 10 analysis, "Sixth Amendment speedy trial standards cannot dictate whether there has been an Article 10 violation." *Id.* at 127. Instead, we "use the [Sixth Amendment] procedural framework to analyze Article 10 claims under the 'immediate steps' standard of the statute and the applicable case law." *United States v. Thompson*, 68 M.J. 308, 312 (C.A.A.F. 2010) (quoting Article 10, UCMJ). Article 10 does not demand "constant motion, but reasonable diligence in bringing the charges to trial." *United States v. Tibbs*, 35 C.M.R. 322, 325 (C.M.A. 1965). "Short periods of inactivity are not fatal to an otherwise active prosecution." *Mizgala*, 61 M.J. at 127. In reviewing whether the demands of Article 10 have been satisfied, "we remain mindful that we are looking at the proceeding as a whole and not mere speed." *Id.* at 125.

Appellant filed a motion to dismiss all charges and specifications based on alleged speedy trial violations with the military judge. After considering the evidence presented and arguments of trial and defense counsel, the military judge issued a written ruling on the date the trial began. The military judge made extensive findings of fact and denied Appellant's motion, ruling that the Government "acted with reasonable diligence in bringing the accused to trial." The military judge's findings of fact detail the investigative and pretrial processing steps taken by the Government, beginning prior to Appellant's entry into pretrial confinement. We accept the military judge's findings of fact insofar as they establish actions of the Government leading to Appellant's arraignment. We review de novo whether those facts demonstrate a lack of reasonable diligence under Article 10, beginning with an analysis of the *Barker* factors.

### 1. Length of the Delay

The first factor under the *Barker* analysis is the length of the delay. This factor serves as a "triggering mechanism," meaning that unless the period of delay is unreasonable on its face, "there is no necessity for inquiry into the other factors that go into the balance." *Cossio*, 64 M.J. at 257 (internal quotation marks omitted) (quoting *United States v. Smith*, 94 F.3d 204, 208–09 (6th Cir. 1996)). In *Cossio*, our superior court held that a full *Barker* analysis was appropriate where the accused had made a timely demand for a speedy trial and had been held in continuous pretrial confinement for 117 days after he moved for relief. *Id.* Likewise, in *Mizgala*, a 117-day period was sufficiently

unreasonable to warrant further analysis. *Mizgala*, 61 M.J. at 128–29. In *Thompson*, a 145-day period of pretrial confinement triggered the full Article 10 inquiry. *Thompson*, 68 M.J. at 312; *see also United States v. Kossman*, 38 M.J. 258, 261 (C.M.A. 1993) ("We see nothing in Article 10 that suggests that speedy-trial motions could not succeed where a period under 90—or 120—days is involved.").

We recognize that this was a complex case involving allegations of diverse misconduct over an extended period of time at multiple locations, and we have accounted for these facts in determining how much weight to give this factor. Nonetheless, we find that this factor weighs in Appellant's favor and that the delay is sufficiently unreasonable on its face to trigger further analysis of the remaining *Barker* factors and Article 10, UCMJ.

### 2. Reasons for the Delay

The evidence in the record and included in the military judge's findings of fact demonstrate that the Government was actively engaged in moving Appellant's case to trial during the 108 days between Appellant's entry into pretrial confinement and his arraignment. On 16 December 2014, Appellant's off-base residence was searched for evidence of the possession and distribution of child pornography. The search was conducted by civilian authorities pursuant to a civilian search warrant and Appellant's computer and cell phone were seized. Appellant also made statements to investigators indicating that he had inappropriately touched his stepsister's son, JSP, on one occasion earlier in the year. On 24 December 2014, Appellant was ordered into pretrial confinement and the pretrial confinement hearing was conducted on 30 December 2014. Between 8 January 2015 and 28 January 2015, a forensic examination of the digital evidence seized from Appellant's residence was conducted. Also, on 8 January 2015, a forensic interview of JSP was conducted by investigators. The military judge concluded that the Government had sufficient information to make decisions about charging Appellant on 3 February 2015 upon receipt of the computer extraction report detailing the images and videos found on Appellant's computer. The military judge noted that during the approximate 30 days between 3 February 2015 and the preferral of charges on 4 March 2015, the Government engaged in completing a proof analysis, internal coordination of the charges and specifications with the deputy staff judge advocate, and coordinating the charges with the general court-martial convening authority's legal office.

The Article 32 hearing was conducted on 24 March 2015 and the preliminary hearing officer completed his report on 27 March 2015. The charges were then referred to trial on 7 April 2015. During a docketing conference on 9 April 2015, trial counsel asserted the Government would be ready to proceed to trial on 11 May 2015, while Appellant's defense counsel asserted that the defense

would be ready to proceed to trial on 3 August 2015. Appellant was arraigned on 10 April 2015, a motions hearing was conducted on 29–30 June 2015, and the trial began on 3 August 2015, as requested by trial defense counsel.

As noted above, Appellant focuses on three periods of time that he alleges constituted unreasonable delay: the approximate six weeks of time the Government was waiting on the forensic analysis of Appellant's computer; the 30-day period prior to preferral of charges when the Government had sufficient charging information; and the period of time between referral of the charges and the start of trial. We do not agree that any of these periods of time were unreasonable.

The military judge held that the forensic examination of the digital media only took approximately 20 days. Even assuming *arguendo* that the Government took approximately six weeks to examine and evaluate this evidence as defense claims, we do not find the delay waiting for this evidence unreasonable, particularly in light of the other investigative steps that were occurring during this period, including the forensic child interview of JSP. In a similar circumstance involving forensic examination of an accused's computer equipment, our superior court in *Cossio* held that "it was not unreasonable for the Government to marshal and weigh all evidence, including forensic evidence, before proceeding to trial." *Cossio*, 64 M.J. at 257. Similarly, we find that the approximate 30-day period between receipt of sufficient information for charging decisions and the preferral of charges was not unreasonable given the actions being taken by the Government to insure the proper charges were drafted and preferred. Finally, the 119-day period of time from the referral of charges until the trial of the case is almost entirely attributable to Appellant. Even taking into account the 35 days between referral of charges and the case ready date asserted by trial counsel, the trial defense counsel asserted that they were not ready for trial until 3 August 2015. Defense counsel readiness accounted for 84 days of the delay until trial. We find that this factor weighs in favor of the Government.

### 3. Speedy Trial Request

Appellant made four requests for a speedy trial. Two formal requests for a speedy trial were submitted on 8 January 2015 and 24 February 2015, respectively. Appellant also demanded speedy trial in two discovery requests dated 9 April 2015 and 6 May 2015, respectively. Even though we have concerns about the two demands for speedy trial included in the discovery requests given the fact that on 9 April 2015, defense counsel also stated that they were not ready to proceed to trial until 3 August 2015, we conclude that this factor weighs in favor of Appellant in light of the two previous requests for speedy trial.

#### 4. Prejudice

Appellant asserts he suffered prejudice from the delay in bringing him to trial because he experienced "anxiety and concern" and was not "afforded necessary psychiatric treatment" while he was in pretrial confinement. Appellant points to his in-patient hospitalization for a psychiatric condition immediately prior to being placed in pretrial confinement as evidence of his need for psychiatric treatment in pretrial confinement. However, Appellant was medically cleared to enter pretrial confinement and spent the vast majority of his time in pretrial confinement—all but 28 days—at the Navy Consolidated Brig Miramar, where he saw a psychiatrist at various times and received medication for his anxiety.

The Supreme Court has established the following test for prejudice in the Sixth Amendment speedy trial context:

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

*Barker*, 407 U.S. at 532 (footnote omitted).

We find that Appellant has failed to demonstrate prejudice under any of these three interests. There is no evidence that Appellant's pretrial confinement was overly harsh or oppressive. Further, Appellant has not identified "particularized anxiety and concern greater than the normal anxiety and concern associated with pretrial confinement." *United States v. Wilson*, 72 M.J. 347, 354 (C.A.A.F. 2013). Finally, and most importantly, Appellant has not alleged that his defense may have been impaired nor do we find any evidence in the record to support such a conclusion.

#### 5. Balancing of *Barker* Factors in an Article 10, UCMJ, Context

Considering the fundamental command of Article 10, UCMJ, for reasonable diligence, and balancing the *Barker* factors, we conclude that Appellant was not denied his right to a speedy trial under Article 10, UCMJ. While there were points in time when the Government might have been able to move the case more expeditiously, we find that the Government acted with reasonable diligence to bring this case to trial, particularly in light of the nature of the case and the need for the results of the computer forensics examination to draft and prefer charges. Our review of the record, including the findings of fact by the

military judge, convinces us that the Government moved consistently towards the trial of this case.

Appellant has failed to demonstrate any cognizable prejudice as a result of the delay. Even though Appellant was in pretrial confinement for 223 days prior to his trial, more than half of that time—117 days—was the period from 9 April 2015, when trial defense counsel asserted that they were not ready for trial until 3 August 2015, until the trial date. Appellant received 224 days of credit against his sentence to confinement for the time he remained in pretrial confinement. We conclude that the Government proceeded to trial with reasonable diligence under the circumstances of this case, and the military judge did not err in concluding that Appellant was not denied his Article 10, UCMJ, right to a speedy trial.

## B. Post-Trial Delay

Appellant also asserts he is entitled to relief based on unreasonable post-trial delay in the processing of his case.

Appellant's court-martial concluded on 5 August 2015 at Beale Air Force Base (AFB), California. The convening authority, located at Davis-Monthan AFB, Arizona, took action 173 days later on 25 January 2016.

In *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006), our superior court established a presumption of facially unreasonable post-trial delay when the convening authority does not take action within 120 days of trial.

Since the convening authority took action 173 days after the trial in this case, there is a facially unreasonable delay. As a result, we examine the four factors set forth in *Barker*:[3] (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of his right to a timely review; and (4) prejudice to the appellant. *Moreno*, 63 M.J. at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005), *Toohey v. United States*, 60 M.J. 100, 102 (C.A.A.F. 2004)). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* at 136 (citing *Barker*, 407 U.S. at 533). However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

### 1. Length of the Delay

As to the first factor—the length of the delay—the 173 days that elapsed from the conclusion of Appellant's trial until the convening authority took ac-

---

[3] 407 U.S. at 530.

tion exceeded the *Moreno* standard by 53 days. This weighs in Appellant's favor.

### 2. Reasons for the Delay

As to the second factor—the reasons for the delay—the Government has offered the declaration of the current non-commissioned officer in charge of military justice at Beale AFB, which provides a detailed description of the post-trial processing of Appellant's case. In addition to the normal business of the base legal office, including periods of leave, temporary duty, and holiday absences of military justice personnel, the Government focuses on three periods of time that resulted in delay in the post-trial processing of this case. The first period of time was the 70 days from the announcement of sentence until assembly of the initial record of trial, including 28 days that elapsed between the forwarding of the transcript to the military judge for review and his completion of that review plus the forwarding of missing documents by the military judge to the base legal office eight days later. The second period was the 33 days between assembly of the initial record of trial and when the record of trial was copied and blocked. By that point in time, 103 days had elapsed since the sentence was announced. However, the Government points to a third period of time that added 19 days to the process, which occurred when legal office personnel became concerned about the handling of sensitive information that was included in the record but not sealed by the military judge. After seeking guidance from higher headquarters as to how to handle the sensitive information, the legal office re-blocked portions of the record. The legal office then mailed the record of trial to the general court-martial convening authority's legal office on 8 December 2015, 125 days after announcement of sentence. The legal office then mailed a copy of the record of trial and the staff judge advocate's recommendation to Appellant in confinement on 21 December 2015.[4] Appellant submitted his clemency matters on 15 January 2016 and the convening authority took action 10 days later on 25 January 2016. While it is clear that Appellant's case could have been processed more rapidly, absolute efficiency is not the test for due process. We find the delay is primarily attributable to reasonable decisions regarding the prioritization of work in the base legal office given the availability of personnel and to the efforts made by base legal office personnel

---

[4] Though not specifically raised by Appellant, we note that Appellant did not receive a copy of the record of trial until 5 January 2016. Appellant should have been provided a copy of the record of the trial as soon as it was authenticated. Article 54(d), UCMJ, 10 U.S.C. § 854(d). Beyond his generalized concern with the speed of the post-trial processing in his case, Appellant did not allege any prejudice as a result of not receiving the record earlier and we detect none.

to ensure an accurate record where sensitive information was handled appropriately. Even so, under the circumstances, we find that this factor does not weigh in favor of the Government.

### 3. Request for Speedy Post-Trial Processing

As to the third factor—Appellant's assertion of his right to timely review—Appellant made no demand for speedy post-trial processing, but instead asserts that his previous demands for a speedy trial should have indicated the importance of expeditiously processing his entire case. We are not persuaded that Appellant exhibited any concern about the speed at which the post-trial processing of his case was occurring, particularly since he did not mention any concerns about post-trial delay in his clemency matters submitted on 15 January 2016, after 163 days had elapsed since the conclusion of his court-martial. We find that this factor does not weigh in Appellant's favor.

### 4. Prejudice

Turning to the fourth factor—prejudice—we note *Moreno* identified three types of prejudice arising from post-trial processing delay: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of the appellant's ability to present a defense at a rehearing. 63 M.J. at 138–39. Where, as here, an appellant does not prevail on the substantive grounds of his appeal, there is no oppressive incarceration. *Id.* at 139. Similarly, where an appellant's substantive appeal fails, his ability to present a defense at a rehearing is not impaired. *Id.* at 140. Appellant's only articulated claim of prejudice was the unlawful discrimination he allegedly suffered during post-trial confinement. As discussed above, we find no unlawful discrimination and we find Appellant had no "particularized anxiety or concern that is distinguishable from the normal anxiety experienced" by appellants awaiting an appellate decision. *See id.* Consequently, we conclude that Appellant has not demonstrated he suffered any prejudice as a result of the post-trial delay and this factor does not weigh in his favor.

### 5. Balancing of the *Barker* Factors

Considering all of the factors together in our review of this case, we do not find a violation of Appellant's due process right to timely post-trial processing and appeal.

### 6. *Tardif* analysis

Although we find no due process violation in Appellant's case, we nonetheless consider whether Article 66(c), UCMJ, 10 U.S.C. § 866(c) relief pursuant to *United States v. Tardif* is appropriate. 57 M.J. 219, 224 (C.A.A.F. 2002). We are guided by factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), with no single

factor being dispositive.[5] Applying these factors and considering the circumstances of Appellant's case, we conclude that no relief is warranted.

On the whole, while the processing of Appellant's case was perhaps not as expeditious as it could have been, we perceive no substantial harm to Appellant, prejudice to the interests of justice or discipline, or erosion of this court's ability to conduct our review or grant appropriate relief based on post-trial delay that would move us to reduce an otherwise appropriate sentence imposed by the military judge and approved by the convening authority.

Further, although not raised by Appellant, we note there was a presumptively unreasonable post-trial delay of slightly more than 18 months between docketing and a decision in this case. *See Moreno*, 63 M.J. at 142 (establishing that a delay greater than 18-months in a service court's review of a case is presumptively unreasonable). Appellant submitted his initial assignments of error on 2 December 2016, almost 10 months after docketing, and after four Appellant-requested enlargements of time. Although the time from docketing to issuing the opinion in this case slightly exceeded 18 months, we find, having considered the totality of the circumstances and the entire record, no particularized prejudice to Appellant or adverse impact to the public perception of the fairness and integrity of the military justice system. *See United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). We also decline to exercise our power under Article 66(c), UCMJ, to grant Appellant relief for post-trial delay in this case. *See Tardif*, 57 M.J.at 225.

## C. Unreasonable Multiplication of Charges

Appellant asserts that the military judge erred when he merged Charge I, Specification 2 with Charge III, Specification 2, and Charge III, Specification

---

[5] These factors include: (1) How long the delay exceeded the standards set forth in *Moreno*; (2) what reasons, if any, the Government set forth for the delay, and whether there is any evidence of bad faith or gross indifference to the overall post-trial processing of this case; (3) whether there is nonetheless evidence of harm (either to the appellant or institutionally) caused by the delay; (4) whether the delay has lessened the disciplinary effect of any particular aspect of the sentence, and whether relief is consistent with the dual goals of justice and good order and discipline; (5) whether there is any evidence of institutional neglect concerning timely post-trial processing, either across the service or at a particular installation; and (6) whether, given the passage of time, whether this court can provide meaningful relief in this particular situation. *Gay*, 74 M.J. at 744, *aff'd*, 75 M.J. 264 (C.A.A.F. 2016).

1 with Charge III, Specification 3 for sentencing purposes rather than dismissing the unreasonably multiplied offenses.[6] We disagree.

Claims of unreasonable multiplication of charges are reviewed for abuse of discretion. *United States v. Campbell*, 71 M.J. 19, 22 (C.A.A.F. 2012).

In a claim regarding error in a military judge's ruling on a motion for unreasonable multiplication of charges, an appellant must show: (1) that the findings of fact upon which a military judge predicated the ruling were not supported by the evidence in the record, (2) that incorrect legal principles were used by the military judge, or (3) that the military judge's application of correct legal principles to the facts of the case was clearly unreasonable. *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

At trial, Appellant moved to dismiss certain charges and specifications based on multiplicity and/or unreasonable multiplication of charges. The military judge found that the original Specification 1 of Charge III and Specification 3 of Charge III were multiplicious and dismissed the original Specification 1 of Charge III. The military judge also found that Specifications 1 and 2 of Charge I were not multiplicious, that original Specification 3 of Charge III was not multiplicious with either of the specifications of Charge I, and that the original Specification 2 of Charge III was not multiplicious with the original Specification 4 of Charge III. Based on the dismissal of original Specification 1 of Charge III, the original Specifications 2–4 of Charge III were then re-numbered as Specifications 1–3 of Charge III.

After announcement of his findings, including his finding Appellant not guilty of Specification 1 of Charge I, the military judge merged Specification 2 of Charge I with Specification 2 of Charge III, and Specifications 1 and 3 of Charge III for sentencing purposes, citing *United States v. Campbell* and the *Quiroz*[7] factors. The military judge noted that the merger of these offenses for sentencing reduced the maximum confinement to which Appellant could be sentenced from 64 years to 32 years.

---

[6] At trial, the military judge identified Specification 1 of Charge I as the specification he was merging with Specification 2 of Charge III for sentencing. Our review of the record convinces us that the military judge mistakenly referred to Specification 1 of Charge I instead of Specification 2 of Charge I. It is clear from the record that the military judge found Appellant not guilty of Specification 1 of Charge I and did not merge that specification with any other offense. It is equally clear from the record that the military judge did, in fact, merge Specification 2 of Charge I with Specification 2 of Charge III, resulting in a recalculation of the maximum potential sentence to confinement from 64 years to 32 years.

[7] *United States v Quiroz*, 55 M.J. 334, 338–39 (C.A.A.F. 2001).

On appeal, Appellant essentially argues that the military judge applied incorrect legal principles by merging the offenses for sentencing rather than dismissing the unreasonably multiplied offenses. Citing to *United States v. Elespuru*, 73 M.J. 326 (C.A.A.F. 2014), Appellant asserts that because the military judge concluded the offenses were unreasonably multiplied, the merger of the offenses for sentencing was an insufficient remedy.

Appellant's reliance on the decision in *Elespuru* is misplaced. In that case, the Government made it clear that certain offenses had been charged in the alternative due to exigencies of proof. 73 M.J. at 327. Our superior court then held that under those circumstances a conviction for both offenses could not stand. *Id.* at 239–30

In this case, the record is devoid of any assertion that the offenses were charged in the alternative. On the contrary, the Government consistently maintained the position that the charged offenses were aimed at distinctly separate criminal offenses.

Nevertheless, the military judge granted relief to Appellant based on his motion for unreasonable multiplication of charges by merging Specification 2 of Charge I with Specification 2 of Charge III and by merging Specifications 1 and 3 of Charge III for sentencing. We find the military judge applied the appropriate law and did not abuse his discretion.

### III. CONCLUSION

The findings of guilt and the sentence are correct in law and fact and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).[8]

---

[8] We also note an error in the court-martial order (CMO) with respect to the original Specification 1 of Charge III. When Appellant was arraigned on 10 April 2015, the original Specification 1 of Charge III was one of the specifications on which Appellant was arraigned. Even though the original Specification 1 was dismissed by the military judge on 4 August 2015 and the three remaining specifications of Charge III were renumbered, in accordance with R.C.M. 1114(c), the CMO should have included the original Specification 1 of Charge III and its disposition. This appears to be merely an oversight resulting in no prejudice to Appellant; however, we direct promulgation of a corrected CMO to remedy this mistake.

Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court