*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
STEPHENS, BONNER, and DEERWESTER
Appellate Military Judges

_____

**UNITED STATES**
*Appellant*

**v.**

**Mason R. TERWILLIGER**
Corporal (E-4), U.S. Marine Corps
*Appellee*

**No. 201900292**

Decided: 21 April 2021

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
John L. Ferriter (arraignment)
Jeffrey V. Munoz (trial)

Sentence adjudged 17 June 2019 by a general court-martial convened at Marine Corps Air Station Miramar, California, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: confinement for 24 months and a dishonorable discharge.[1]

For Appellant:
*Lieutenant Daniel O. Moore, JAGC, USN*

---

[1] Pursuant to a plea agreement, the convening authority suspended all confinement in excess of 13 months.

For Appellee:
*Lieutenant Gregory A. Rustico, JAGC, USN*
*Lieutenant Joshua C. Fiveson, JAGC, USN*

Judge DEERWESTER delivered the opinion of the Court, in which Senior Judge STEPHENS and Judge BONNER joined.

_____

**This opinion does not serve as binding precedent under NMCCA Rule of Appellate Procedure 30.2(a).**

_____

DEERWESTER, Judge:

Appellant was convicted, consistent with his pleas, of conspiracy to distribute cocaine, an attempt to distribute cocaine, wrongful use of cocaine, and wrongful use of marijuana, in violation of Articles 80, 81, and 112a, Uniform Code of Military Justice [UCMJ].[2]

Appellant raised two assignments of error [AOEs]. First, Appellant asserts that the Government violated his due process rights under Article 10, UCMJ, by not taking immediate steps to bring him to court-martial after placing him in pretrial confinement [PTC]. Second, Appellant asserts that the military judge abused his discretion when he accepted a guilty plea without first inquiring into the impact the pretrial delay of 311 days had on Appellant's voluntariness to accept the plea.[3]

Appellant now requests that we set aside the findings and sentence. Having carefully considered the record of trial and the parties' submissions, we are convinced the findings and sentence are correct in law and fact and that no error materially prejudiced Appellant's substantial rights.[4]

---

[2] 10 U.S.C. §§ 880, 881, 912.

[3] This AOE is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). We have reviewed this AOE and find it to be without merit. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

[4] UCMJ arts. 59(a) and 66(c).

## I. BACKGROUND

In the spring of 2018, Appellant attended an off-base party with several friends, both military and civilian. While there, he used cocaine. Several weeks later, he tested positive for cocaine in a unit urinalysis. During that same summer, he continued to use illegal drugs and began a conspiracy with LCpl Lima[5] to distribute cocaine, completing at least one transaction and attempting to complete several other sales. In addition to both using and distributing cocaine, Appellant also used marijuana at yet another party during the summer of 2018.

Appellant was not placed into pretrial confinement [PTC] for this misconduct, but was confined when an unrelated report of sexual assault was made against him on 10 August 2018. Ms. Alpha, a civilian, accused Appellant, LCpl Lima, and an additional suspect of nonconsensual oral and vaginal sex. Naval Criminal Investigative Service [NCIS] began an investigation, and Appellant was put into PTC on 11 August 2018. NCIS then conducted the drug investigation and the sexual assault investigation jointly.

On 13 August 2018, NCIS seized Appellant's DNA sample and sent the sample to the Defense Forensic Science Center. While awaiting results from the lab, Appellant was given an Initial Review Officer [IRO] hearing to determine whether he should remain in PTC. The IRO kept Appellant in pretrial confinement.

NCIS conducted several other investigatory steps after sending the DNA sample to the lab. In the initial report, NCIS had conducted and summarized six interviews; obtained and reviewed body camera footage; conducted multiple searches of different locations; obtained, processed, and reviewed multiple photographs; and processed the victim's sexual assault forensic exam. NCIS also sent Appellant's drug samples to the Naval Drug Screening Laboratory at Great Lakes, Illinois, for confirmation testing.

On 9 October 2018, NCIS released its first Report of Investigation, which contained 23 exhibits and was over 250 pages long. At this point, Appellant had been in pretrial confinement for 60 days. Once the trial counsel received the report, it began drafting charges to send to an Article 32 preliminary hearing on 15 October 2018. On 23 October 2018, the Government preferred charges against Appellant for abusive sexual contact, false official statement, wrongful use of an illegal substance, sexual assault, and assault consummated by a battery. The special court-martial convening authority then sched-

---

[5] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

uled an Article 32 hearing for 5 November 2018. The Defense requested 22 days of excludable delay to prepare for the hearing, asking for a 27 November 2018 hearing date. The Defense delay request was granted.

Pending the Article 32 preliminary hearing, NCIS continued taking investigative steps to investigate both series of charges. On 7 November 2018, NCIS submitted the suspected cocaine to the San Diego Sheriff's Department Crime Laboratory for analysis. On 9 November, NCIS sent Ms. Alpha's DNA sample to the forensics lab to determine if it was present with Appellant's sample.

The Article 32 hearing was held on 27 November 2018, and the preliminary hearing officer issued his report on 3 December 2018, recommending general court-martial for all charges and specifications except one additional distribution specification. On 6 December, the general court-martial convening authority referred charges against Appellant, and his arraignment was scheduled for 13 December 2018, after he invoked his statutory five-day waiting period. At the time of arraignment, Appellant had spent 124 days in PTC. Although there was a colloquy between the military judge and trial counsel regarding a potential speedy trial violation under Rule for Courts-Martial [R.C.M.] 707, no speedy trial request was made. The military judge was satisfied there was no R.C.M. 707 violation because Appellant had requested and been granted 22 days of excludable delay.[6]

At arraignment, both parties agreed to a trial management order that set the trial dates for 1-5 April 2019. After a colloquy with the military judge, Defense counsel concurred and agreed with these dates. The order also established two Article 39(a) motion dates; 13 February 2019 and 15 March 2019. Appellant did not demand a speedy trial at his arraignment.

On 15 February 2019, all parties again met for an Article 39(a) session. Prior to this session, Appellant hired civilian defense counsel, and they entered an appearance on the record. The first motion heard by the court was a motion by the Defense to continue the trial until 29 April. This motion was made due to the recent addition of civilian defense counsel to the case, and the time they needed to review the approximately 7,500 pages of discovery, 8,000 pages of text messages, and 15 hours of video interviews NCIS had

---

[6] Of note, although the military judge stated that the 5-day waiting period cannot be held against Appellant for purposes of RCM 707 violations, which is incorrect. *See United States v. Cherok*, 22 M.J. 438, 440 (C.M.A. 1986) (holding the Article 35, UCMJ, five-day waiting period "provides a shield with which an accused may prevent too speedy a trial, not a sword with which an accused may attack the Government for failing to bring him to trial sooner.").

gathered throughout the investigation. The Government did not oppose the motion for a continuance and the military judge granted the motion. Further, both sides requested, and the military judge granted, a continuance of the next Article 39(a) session from 15 March 2019 to 12 April 2019. This continuance was to enable the newly retained civilian defense counsel further opportunity to get up to speed on the complicated aspects of the trial. Both sides argued additional motions at this 15 February session, and again Appellant did not demand a speedy trial at the hearing.

On 26 March 2019, defense counsel filed a motion to dismiss due to violations of Article 10, UCMJ, citing 124 days between the time Appellant was placed into PTC and when he was arraigned. Although the motion discussed post-arraignment delay briefly, it specifically focused on the 124 days prior to arraignment, as all parties had agreed to trial dates at arraignment. The military judge denied the motion to dismiss, finding the 124-day delay was not unreasonable due to the complexity of the case, no deliberate attempt to delay the trial, no speedy trial demand throughout the entire proceeding, and thus no prejudice.[7]

Due to a victim preference statement by Ms. Alpha to not participate in the proceeding due to her pregnancy, trial counsel moved for a continuance from 29 April 2019 until the first week of October 2019 to allow for the pregnancy and postpartum period to end. The Defense opposed this motion, and the military judge denied the motion, citing a lack of evidence presented by the Government that Ms. Alpha's testimony would negatively affect her pregnancy, and the length of delay.

Subsequent to the Government's request for a continuance, civilian defense counsel filed a motion to dismiss for discovery violations due to information relating to the DNA evidence. The military judge found that although the Defense expert could not access all the available DNA evidence due to missing information in the discovery, there was no bad faith on the part of the Government. The military judge did, however, offer Appellant a continuance so that his expert could review the DNA data prior to trial. After consultation with Appellant, civilian defense counsel asked for a continuance to 27 May 2019, which was granted. Civilian defense counsel then requested

---

[7] Of note, the military judge issued a preliminary ruling via email sent to all parties, in which he stated the actual ruling would be attached to the record of trial. But the ruling was never attached until the case was in appellate review. Military judges are cautioned to be diligent in attaching all rulings to the record of trial as appellate exhibits prior to issuing the Entry of Judgment, and not rely solely on email or other outside the Record informal communications.

and received a final continuance until 10 June 2019 due to their court schedules.

During the course of the trial preparation, Appellant signed a plea agreement on 15 May 2019, agreeing to plead guilty to attempted distribution of cocaine, conspiracy to distribute cocaine, and wrongful use of cocaine and marijuana. Per the agreement, the charges involving Ms. Alpha were dismissed without prejudice. He was sentenced to 24 months confinement and a dishonorable discharge, and received 311 days of PTC credit against the 13 months' confinement that were not suspended under the agreement.[8]

## II. DISCUSSION

### A. Standard of Review and the Law

We review Article 10, UCMJ, speedy trial claims de novo.[9] Article 10 demands that when a servicemember is placed in pretrial confinement, "immediate steps shall be taken . . . to try the person or to dismiss the charges and release the person."[10] In reviewing Article 10 claims, courts do not require "constant motion," from the Government, but do require "reasonable diligence in bringing the charges to trial."[11] This "duty imposed on the Government immediately to try an accused who is placed in pretrial confinement does not terminate simply because the accused is arraigned."[12] Rather, it extends to "at least the taking of evidence."[13] In conducting our review, we give substantial deference to the military judge's findings of fact, reversing only if they are clearly erroneous.[14] Finally, we look at four factors from *Barker v. Wingo* in examining the circumstances surrounding an alleged Article 10 violation: "(1) the length of the delay; (2) the reasons for the delay; (3) whether the

---

[8] Pursuant to the plea agreement, all confinement in excess of 13 months was suspended.

[9] *United States v. Cooper*, 58 M.J. 54, 58 (C.A.A.F. 2003).

[10] UCMJ art. 10(b)(1).

[11] *United States v. Mizgala*, 61 M.J. 122, 127 (C.A.A.F. 2005) (quoting *United States v. Tibbs*, 15 C.M.A. 350, 353 (C.M.A. 1965).

[12] *Cooper*, 58 M.J. at 60.

[13] *Id.*

[14] *Mizgala,* 61 M.J. at 127.

appellant made a demand for a speedy trial; and (4) prejudice to the appellant."[15]

We recognize that none of the four factors has any "talismanic power. Rather, we must . . . weigh all the factors collectively before deciding whether [an accused's] right to a speedy trial has been violated."[16]

## B. Appellant Contributed to the Delay and Was Not Unfairly Prejudiced

In balancing the *Barker* factors, we conclude the Appellant was not denied his right to a speedy trial under Article 10 and consequently, the military judge did not err in failing to grant relief.

### 1. Length of the delay

The length of delay constitutes a triggering mechanism under Article 10.[17] Appellant spent 311 days in PTC. Therefore, we conclude that the delay from Appellant's placement into PTC on 11 August 2018 through trial on 17 June 2019 is sufficient to trigger analysis of the remaining *Barker* factors. However, we are mindful that 187 of these 311 days, or approximately 60 percent of the time in PTC, was due to either Defense concurrence in or requests for agreed-upon trial dates and continuances.

### 2. Reasons for the delay

This was a complicated case involving two sets of charges, with two very different sets of witnesses. While narcotics cases and sexual assault cases are somewhat common in the military, here Appellant was facing multiple charges for use and distribution of multiple drugs, as well as a sexual assault allegation with more than one alleged perpetrator. Both investigations required detailed analysis by different labs, and both investigations required extensive preparation by defense counsel. As mentioned above, the vast majority of the delay in this case took place post-arraignment, when all parties agreed on timelines due to their respective trial preparations.

---

[15] *Id.* at 129 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

[16] *United States v. Wilson*, 72 M.J. 347, 354-55 (C.A.A.F. 2013).

[17] *United States v. Thompson*, 68 M.J. 308, 312 (C.A.A.F. 2010) (holding that the 145-day period the appellant spent in pretrial confinement was sufficient to trigger an Article 10 inquiry); *United States v. Cossio*, 64 M.J. 254, 257 (C.A.A.F. 2007) (holding that a 117-day period of pretrial confinement triggered the full Article 10 inquiry).

We find no unreasonable delay between Appellant's placement into PTC on 11 August 2018 and his 13 December 2018 arraignment. Appellant faced separate drug and sexual assault charges that involved complicated issues throughout the investigation, as was outlined in the Defense continuance request. The Government did not intentionally delay bringing Appellant to arraignment and moved expeditiously through a complex multi-suspect sexual assault allegation and multiple drug charges. In fact, the Government was prepared to bring Appellant to arraignment even sooner; however, defense counsel both requested a delay of the Article 32 hearing and invoked Appellant's statutory five-day waiting period prior to arraignment. Although the Government took 124 days from initiation of PTC to arraignment, based on the complexity of the investigations and the delay requests by the Defense, this time was not unreasonable under the circumstances.

Following arraignment, "a change in the speedy-trial landscape [took] place. This is because after arraignment, 'the power of the military judge to process the case increases, and the power of the Government to affect the case decreases.'"[18] In short, once Appellant was arraigned, the military judge had the "power and responsibility to force the Government to proceed with its case if justice so require[d]."[19]

The military judge, with the concurrence of the defense counsel, as well as the trial counsel, initially issued a trial management order setting trial for 1-5 April 2019. That is nearly 120 additional days of delay that the Defense agreed to, rather than demanding a speedy trial, at arraignment. Given the Defense's concurrence, we find any delay between arraignment and 13 December 2018 and 1 April 2019 was presumptively reasonable.[20]

Similarly, after the initial trial management order was signed by all parties, Appellant hired civilian defense counsel, who in an effort to become fully prepared for the upcoming trial requested an additional 28-day delay before the commencement of trial. We find that this Defense-requested delay should not be held against the Government, and was not unreasonable.

---

[18] *Cooper*, 58 M.J. at 60 (quoting *United States v. Doty*, 51 M.J. 464, 465-66 (C.A.A.F. 1999).

[19] *Id.*

[20] *United States v. King*, 30 M.J. 59, 66 (C.M.A. 1990) (holding that an accused "cannot be responsible for or agreeable to delay and then turn around and demand dismissal for that same delay"); *United States v. Toombs*, 574 F.3d 1262, 1274 (10th Cir. 2009) ("[d]elays attributable to the defendant do not weigh in favor of a Sixth Amendment violation") (citation omitted).

The Government, faced with a sexual assault victim who declined to participate in the trial due to her pregnancy, was required to request a continuance as well in an effort to procure her testimony at trial. However the military judge denied that motion, and forced the Government to go forward with the modified dates as extended by the Defense-requested continuances.

The Government did, however, fail to provide the Defense all discovery necessary for Defense's expert assistance in handling the DNA evidence. The military judge found that this was not intentional, or part of any bad act by the Government, and denied the Defense motion to dismiss. The military judge did grant the Defense the opportunity to request another continuance, which it did.[21]

Therefore, in assessing whether the Government acted with reasonable diligence in bringing the charges to trial, we focus on the period between 29 April 2019 and the requested date for the start of trial on 27 May 2019 after the Defense delay request.[22] In doing so, we are mindful that a "deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government," while "a valid reason . . . should serve to justify appropriate delay." [23]

Here, we agree with the military judge that there was no bad act by the Government, nor any intent to delay the trial. The Government, while inadvertently not disclosing all information in a way that the Defense expert could utilize it, did not do so to delay the trial or to increase the amount of time Appellant spent in PTC. Further, the Defense requested additional delay even after the discovery-related continuance was granted. As such, we find that all reasons for the delay in this case were reasonable.

*3. Demand for speedy trial*

We have long held that "the right to speedy trial is a shield, not a sword," and that "failure to assert the right will make it difficult for [an accused] to

---

[21] Of note, in the colloquy with the military judge on requesting a continuance, civilian defense counsel asked for a date that would work for a separate, non-DNA expert that had to be approved. The military judge counseled the CDC that the continuance was to allow the DNA expert extra time to review the data she did not receive, not for additional prep time for the defense on a wholly separate expert.

[22] *Mizgala*, 61 M.J. at 127. Defense asked for, and was given, another delay until 10 June 2019 due to a conflict with trial schedules. This delay could not be held against the Government.

[23] *Barker*, 407 U.S. at 531.

prove that he was denied a speedy trial."[24] Although Appellant moved to dismiss all charges and specifications based on discovery violations, as well as Article 10 violations, those motions included no demand for a speedy trial. Appellant argues that his original opposition to a Government request for excludable delay prior to the Article 32 preliminary hearing was tantamount to a demand for speedy trial. We disagree and hold that mere opposition to delay, or references to Article 10—without more—do not constitute a demand for a speedy trial.[25] Indeed, the Defense did not raise an Article 10 motion until the second motions hearing. Subsequent to the proper denial of its Article 10 motion, the Defense asked for additional continuances; the exact opposite of a demand of speedy trial.[26]

### 4. Prejudice to Appellant

"'Prejudice . . . should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect.'"[27] We, therefore, examine the question of prejudice in light of three important interests the Supreme Court identified in *Barker*: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern; and (3) to limit the possibility that the Defense will be impaired.[28] "'Of these, the most serious is the last, because the inability of [an accused] to adequately to prepare his case skews the fairness of the entire system.'"[29]

Appellant contends that he experienced oppressive pretrial incarceration, as he was "attacked by another prisoner," "experienced '[rat] activity' in the

---

[24] *United States v. Miller*, 66 M.J. 571, 575 (N-M. Ct. Crim. App. 2008).

[25] *United States v. Foster*, No. 201200235, 2013 CCA LEXIS 92, at \*7-8 (N-M. Ct. Crim. App. Feb. 7, 2013) (per curiam) (unpublished) (concluding the appellant made no demand for speedy trial where a motion to dismiss did not include a demand for a speedy trial and acknowledged the appellant's agreement to the trial schedule); *United States v. Brooks*, No. 200501266, 2007 CCA LEXIS 166, at \*12-14 (N-M. Ct. Crim. App. May 16, 2007) (unpublished) (holding there was no demand for a speedy trial, despite the appellant filing a motion to dismiss based on denial of speedy trial rights), *aff'd on other grounds*, 66 M.J. 221 (C.A.A.F. 2008).

[26] Appellant did make a request to the Convening Authority to release him from PTC due to unsanitary living conditions, but that request was denied after proper affidavits filed by the brig chain of command. The Defense never requested any credit under Article 13, UCMJ based on these claims.

[27] *Mizgala*, 61 M.J. at 129 (quoting *Barker*, 407 U.S. at 532).

[28] *Barker*, 407 U.S. at 532.

[29] *Mizgala*, 61 M.J. at 129 (quoting *Barker*, 407 U.S. at 532).

galley facility that required the staff to set traps, and spend '10+ hours a month on pest control,'" and had to wear extra layers of clothing for five days due to a heating issue at the brig.[30] Further, Appellant contends that he lost the ability to work with his expert for a period of 77 days while the Government finalized the contract for the Defense expert.

As to the conditions of his pretrial confinement, Appellant raised his concerns to the Convening Authority, who investigated and determined continued confinement was warranted. Appellant did not file either an Article 13 or R.C.M. 305(k) motion based on these claims, and has failed to show that his anxiety was any greater than the normal anxiety and concern associated with PTC.[31] Further, with regard to the delay of the use of his expert, it should be noted that the expert was an expert in the field of DNA. Not only did his Defense receive multiple continuances to consult with this expert, but Appellant also neither pleaded guilty nor was convicted of any charges involving that expert.[32] Therefore, the Defense was not impaired.

## III. CONCLUSION

After careful consideration of Appellant's assigned error, the record of trial, and the parties' submissions, we conclude the findings are correct in law and fact. Accordingly, the findings are **AFFIRMED**.

Senior Judge STEPHENS and Judge BONNER Concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

---

[30] Appellant's Br. at 18.

[31] *See Wilson*, 72 M.J. at 354 (expressing CAAF's concern "not with the normal anxiety and concern experienced by an individual in pretrial confinement, but rather with some degree of particularized anxiety and concern greater than the normal anxiety and concern associated with pretrial confinement").

[32] The DNA expert was to assist in the charges of sexual assault, which were dismissed once a plea agreement was reached.